Cheshire,
No. 5383.

EINO LUOMA & *a.*

*v.*

UNION SCHOOL DISTRICT OF KEENE & *a.*

Argued September 10, 1965.
Decided October 29, 1965.

*William H. Watson, Jr.* (by brief and orally), for the plaintiff.

*Bradley & Bradley* (*Mr. Homer S. Bradley, Jr.* orally), for the defendant School District of Harrisville.

*Goodnow, Arwe & Ayer* for the defendant Union School District of Keene, filed no brief.

BLANDIN, J. The issue here is whether the minor Lauri Luoma resided in the Harrisville school district, which has no high

school, within the meaning of RSA 194:27. This statute reads as follows:

"TUITION. Any district not maintaining a high school or school of corresponding grade shall pay for the tuition of any pupil who with parents or guardian resides in said district or who, as a resident of said district, after full investigation by the state board of education is determined to be entitled to have his tuition paid by the district where he resides . . . . "

*Ebelt* v. *Ebelt,* 103 N. H. 369, involved the construction of the phrase "the town in which the child resides at the time the order is made . . . " appearing in RSA 458:18, which governs the liability of towns for the maintenance of children under the custody of the New Hampshire Department of Public Welfare. The opinion noted that "The words 'residence' and 'resides' are slippery words having many meanings. . . . " *Id.,* 371. A glance at the numerous and sometimes seemingly conflicting authorities gathered in Annot. 83 A.L.R. 2d 497, and elsewhere, which discuss the meaning of "residence" and "resides" for the purpose of fixing tuition fees for public schools, seems to abundantly confirm the Court's observation.

However, upon analysis, certain guideposts appear in a jungle of words and ideas. One of these is that the overriding policy of RSA 194:27 and similar statutes is to provide all children within the borders of a state with a free public school education (*Lisbon School District* v. *District,* 75 N. H. 324, 325; 47 Am. Jur., Schools, *s.* 152, *p.* 407), and that the statutes should be construed liberally to that end. Annot. 83 A.L.R. 2d 497, *ss.* 2(b), 4(a). See also, *Id., s.* 6(a), *pp.* 509-510.

A second pertinent principle is that residence in a town or district for school purposes must be bona fide and not merely for the purpose of attending a particular school. *School District No. 1 in Milton* v. *Bragdon,* 23 N. H. 507, 516. Annot. 83 A.L.R., *supra, ss.* 2, 2(a), 4(b). Another and obvious consideration is that, since the question is factual, each case must stand upon its own peculiar facts and that authorities from other jurisdictions are of little assistance. Annot. 83 A.L.R., *supra, s.* 4(a); 47 Am. Jur., *supra, s.* 152.

Finally, it seems established that while the residence of a child may differ from that of a parent, nevertheless the residence of the parent having custody generally determines that of the child. 47 Am. Jur., *supra, s.* 152. "Whether or not a child of public school age is a resident under various statutes providing that

school districts must furnish free school facilities and privileges to its residents has generally depended upon the residence of the child's parents." Annot. 83 A.L.R., *supra, s.* 4(a). This principle seems peculiarly applicable in the present situation, since RSA 194:27 says that any district which does not maintain a high school "shall pay for the tuition of any pupil who with parents or guardian resides in said district . . . . " This would appear to contemplate that the domicile of the parents or parent having custody is of substantial significance.

In the light of these general principles, a somewhat detailed examination of the record is indicated. We believe that it sustains certain conclusions, express and implied, reached by the Presiding Justice, as follows:

Lauri Luoma is the minor child of the plaintiff Eino and of Ann Luoma, born at Harrisville while they were legally married and residing there. In 1955, while Lauri was still a young boy, they were divorced, custody was given to the mother Ann, and Lauri accompanied her and his brothers and sisters to Annapolis, Maryland, where his mother taught school. They lived there for some years and Lauri, who had been free of asthma while he was in Harrisville, began to be severely afflicted with the disease. He missed a great deal of school and his breathing became labored. His mother realized that he had to be removed from the damp and humid climate which prevails at Annapolis.

In spite of the divorce, the relations between Ann and Eino and, in fact, the entire family, including Eino's mother, had remained friendly. The father had always paid the weekly allowance to his wife for the children, as provided in the divorce decree. In this situation, Ann contacted Eino, whose residence for many years was and has continued to be in Harrisville, to see if he would accept the custody of Lauri and take his son to Harrisville, where the boy had been free of asthma.

Eino agreed to take custody of his son, which was granted to him by the Court. Lauri went to Harrisville in the fall of 1962 to live with his father and paternal grandmother. Shortly thereafter, difficulties arose in the matter of transporting Lauri from Harrisville to Keene. A school friend of Lauri's summoned by the defendant Harrisville, who customarily rode on the school bus from Harrisville to Keene, said that he remembered in the fall of 1962 seeing Lauri on the bus only "once or twice" and of seeing him "once or twice attempting to take the bus . . . . " After that he never saw Lauri on the bus.

Although efforts were made by Eino, it appeared that there was no other feasible way except by school bus for the boy to travel from Harrisville to Keene. As a result, the father attempted and succeeded in finding a place for Lauri to board during the school year 1962-63. During this period the boy ordinarily returned to Harrisville weekends, which he spent with his father, except on certain occasions when there was some athletic event or other school function he stayed in Keene. The father paid for Lauri's board and room in Keene. During the summer, the boy lived with his mother and brothers and sisters in a cottage which they rented in Nelson, New Hampshire, where, as in Harrisville, Lauri did not suffer from asthma.

At the beginning of the school year 1963-64, Lauri went to Harrisville and for a time used his father's car to drive himself to school. This proved impractical because the father needed the car himself. As a result, Eino found another boarding place in Keene for Lauri to live, as the people with whom he had stayed the previous year had moved away. During the school year 1963-64, the boy came back to Harrisville about half of his weekends. On others he and his father drove together to Beverly, Massachusetts, where Mrs. Luoma had moved, and spent the weekends with her and the rest of the family. On other occasions, he stayed in Keene. The summer was again spent in Nelson at the rented cottage.

The reason Lauri left Annapolis and moved to Harrisville and never lived in Beverly at any time, in both of which cities he could have received free tuition, was because of his health. Beverly, being located near the sea, has the same damp climate as Annapolis. On one occasion when he went there for the Christmas holidays, he was confined to his bed for two weeks with asthma.

In *Lisbon School District* v. *District,* 75 N. H. 324, 325, in regard to Laws 1901, *c.* 96, *s.* 1, upon which RSA 194:27 is based, the Court spoke as follows: " . . . the liability intended [by the statute] was for the tuition of such scholars as would properly have attended such a school had there been one in the district . . . . " That Lauri would have remained during the school years in Harrisville with his father and legal guardian, with whom his relations were very friendly and who held custody over him, and would "properly have attended . . . school there" is a conclusion amply supported by the record.

The Court found that the controlling reason why the boy's

residence became Harrisville was because of his health. Once Lauri had moved there, the fact that he desired an education and that the obvious place was Keene, does not affect the Court's determination that the boy's residence in Harrisville was not for the purpose of attending school in Keene from the Harrisville district. The situation before us is distinguishable from such cases as *School District No.* 1 *in Milton* v. *Bragdon,* 23 N. H. 507, relied upon by the defendant Harrisville. In *Milton* and similar cases, it was found that the real purpose of a pupil's alleged residence was to evade the statute and give the pupil an "ostensible" but not a real residence. *School District No.* 1 *in Milton* v. *Bragdon, supra,* 516. In *Lewis* v. *Holden,* 118 Vt. 59, also cited by the defendant Harrisville, the controlling statute (V.S. 47, *s.* 4308) differed from ours. In summary, we believe that the Court's verdict is sustainable and that Lauri Luoma was a resident of Harrisville during the school years 1962-64 inclusive, within the spirit and meaning of RSA 194:27.

What we have said disposes of other issues raised and, there being no error in the trial, the order is

*Judgment on the verdict.*

All concurred.