Keene District Court
No. 81-004

*In re* EVA S.

October 1, 1981

*Douglas K. Watson,* of Keene, by brief and orally, for the Town of Westmoreland.

*David S. Park,* assistant city attorney, by brief and orally, for the City of Keene.

*Gregory H. Smith,* attorney general (*Loretta S. Platt,* attorney, on the brief), by brief for the State of New Hampshire as amicus curiae.

KING, C.J.   The Keene District Court has transferred to this court four questions for our determination. Because two of these questions were waived by the parties at oral argument, we will answer only the remaining two. The first question is whether the term "suitable adult" as used in RSA 169-D:17 I(b)(1) (Supp. 1979) includes within its meaning a licensed foster home. The second question is whether the receipt of assistance under the Aid to Families with Dependent Children (AFDC) program for 365 days

constitutes assistance to a pauper within the meaning of RSA 164-A:5 (Supp. 1979). We answer both questions in the negative.

Eva S. lived with her mother in Keene, New Hampshire, until June 7, 1979, at which time she was placed in the legal custody of the Division of Welfare (division). While Eva and her mother resided in Keene, Eva's mother received AFDC benefits for a total period in excess of 365 days. On June 8, 1979, the division placed Eva in a foster home in Hinsdale, New Hampshire, where she remained until June 20, 1980. Although the City of Keene was found to be the legally liable unit for her placement, Eva's stay in the foster home was funded through AFDC. On June 20, 1980, Eva's mother received physical custody of Eva, although the division's legal custody of Eva was not terminated until October 30, 1980.

Eva and her mother continued to reside in Keene until August 8, 1980, when they moved briefly to Winchester, New Hampshire. Sometime between August 9 and August 24, 1980, the family moved to Oklahoma, where they stayed until September 25, 1980, when they returned to New Hampshire to stay with Eva's grandmother in Westmoreland.

On October 18, 1980, Eva was charged in the Keene District Court with being a child in need of services pursuant to RSA ch. 169-D (Supp. 1979). That same day, Eva's attorney entered a plea of chargeable on her behalf, and the matter was continued for a probation report and an investigation concerning a group or foster home placement for her. Upon completion of the investigation, the probation department recommended that Eva be placed at Orion House, a group home in Newport, New Hampshire.

On November 25, 1980, the Court (*Davis*, J.) held a hearing to determine the unit legally liable for the expense of Eva's stay at Orion House. The City of Keene, the Town of Westmoreland, the County of Cheshire, and the State of New Hampshire, through the Division of Welfare, all participated in the hearing. After the hearing, the court and the parties agreed to transfer to this court four questions of law.

The first question that we address is "[d]oes the payment and receipt of AFDC benefits for 365 days constitute assistance to a pauper so as to cause such a recipient to lose his or her settlement pursuant to RSA 164-A:5?"

RSA ch. 165 entitled "Aid to Town Paupers" provides that whenever a person in any town is poor or unable to support himself, the town authorities must relieve and maintain him whether he has a settlement in that town or not. RSA 165:1 I (Supp. 1979).

■■■ RSA 165:20 (Supp. 1979) allows a town expending any money for the support of a pauper having no settlement or a settlement in another town to recover the money so paid from the person or entity chargeable with the pauper's support. It is clear, therefore, that a town is ultimately liable only for the support of those paupers having a settlement in that town. Although it must provide needed assistance to paupers within its borders in the first instance, it may recover the amount expended from the legally chargeable unit or the persons chargeable with the person's support. RSA ch. 166 entitled "Aid to County Paupers" provides that each county is liable for the support of any county pauper who resides in that county. RSA 166:10 (Supp. 1979). A "county pauper" is any person for whose support no person or town is chargeable. RSA 166:1 (Supp. 1979). RSA ch. 164-A entitled "Settlement of Persons" sets forth rules for determining how a settlement is gained or lost for purposes of fixing liability for assistance to a pauper on either the town or the county.

RSA 164-A:5 (Supp. 1979) states that "[a]ny settlement gained under this chapter shall be lost by any person who has been assisted as a pauper for a total of 365 days." The question before us is whether the "assistance" referred to is limited to that general assistance administered by a local governmental unit or also includes aid received under State or federal public assistance programs such as aid to the blind, the aged, disabled persons, or dependent children under RSA ch. 167.

■■■ The statutory scheme contemplates the separation of these two types of assistance. Provision for general assistance to paupers is made in RSA ch. 165 and RSA ch. 166. Provision for public assistance to the blind, the aged, or disabled persons, or dependent children is made in RSA ch. 167. There are no rights of action by a local governmental unit against a State or federal governmental unit to recover expenditures made in connection with general assistance. Correspondingly, there are no rights of action by a State or federal governmental unit against a local governmental unit for expenditures made in connection with public assistance, with the exception of those contained in RSA 167:18-a and :18-b. RSA 167:18-a requires that all expenditures made in carrying out the purposes of that chapter and chapter 161 (Division of Welfare, Department of Health & Welfare) shall be made in the first instance from a public assistance fund but that each town or county shall reimburse the fund for fifty percent of all sums paid as assistance to persons for whose support the town or county is liable. RSA 167:18-b provides that the town's or county's

obligation to reimburse shall be limited to fifty percent of the non-federal share of assistance paid to the elderly or permanently or totally disabled recipients who are in nursing homes.

RSA 167:18-c (Supp. 1979) specifically makes the loss of settlement provision of RSA 164-A:5 (Supp. 1979) applicable to the liability of cities or towns to reimburse the public assistance fund relative to old-age assistance and to aid to the permanently and totally disabled. Apparently, the legislature intended to treat these two categories of public assistance as aid to a pauper being paid by a local government. Under this provision, a person receiving old age assistance or aid to the permanently or totally disabled would lose his or her settlement after 365 days. When the recipient lost his or her settlement, the town would no longer be liable for that person's support and would no longer be obligated to reimburse the public assistance fund for payments made to the recipient. If the legislature had intended similar results to flow from a person's receipt of AFDC benefits, it could have done so. It did not.

■ Accordingly, we answer the first question "no"; the receipt of AFDC benefits for 365 days does not cause the recipient to lose his or her settlement under RSA 164-A:5 (Supp. 1979).

We next address the question: "Does the term 'suitable adult' as used in RSA 169-D:17 I(b)(1) comprehend within its common or general meaning a licensed foster home?"

In 1979, the legislature repealed RSA ch. 169 entitled "Neglected and Delinquent Children and Persons in Need of Supervision." See Laws of 1979, 361:1. In its place, the legislature substituted RSA ch. 169-B (Supp. 1979) entitled "Delinquent Children," RSA ch. 169-C (Supp. 1979) entitled "Child Protection Act," and RSA ch. 169-D (Supp. 1979) entitled "Children in Need of Services." All three of these chapters provide the district court with specific alternatives for direct placement of children under its jurisdiction. See RSA 169-B:19 (Supp. 1979); RSA 169-C:19 (Supp. 1979); RSA 169-D:17 I(b)(1) (Supp. 1979).

■ RSA ch. 169-C (Supp. 1979) clearly contemplates the placement in a foster home of a child in need of protection. RSA 169-C:3 XIII (Supp. 1979) defines a foster home. RSA 169-C:6 II(c) (Supp. 1979) authorizes a police officer acting in a health or life-threatening emergency to take a child into protective custody and to place the child in a foster home. RSA 169-C:23 (Supp. 1979) provides standards for the release of a child to his or her parents from a foster home. In light of these three provisions it is reasonable to construe RSA 169-C:19 (Supp. 1979), which authorizes the

court to transfer legal custody to a "child placement agency," as permitting the child to be placed in a foster home.

■ There is no mention of foster care in RSA ch. 169-D (Supp. 1979). RSA 169-D:17 I(b)(1) (Supp. 1979) restricts the district court to releasing the child to "(1) [a] relative or suitable adult; or (2) [a] group home, crisis house, or shelter care facility with expenses charged in accordance with RSA 169-D:29." Because the former RSA ch. 169 contained a specific provision for placement of a child in need of supervision into a foster home, and RSA 169-D:17 I(b)(1) (Supp. 1979) makes no such provision, either expressly or impliedly, we conclude that the legislature intended that the district court no longer have this option.

Accordingly, we answer the second question "no"; a foster home is not a "suitable adult" within the meaning of RSA 169-D:17 I(b)(1) (Supp. 1979).

*Remanded.*

BATCHELDER, J., did not sit; the others concurred.