Keene District Court
No. 81-359
Concord District Court
No. 81-404
Belknap
No. 82-040

*In re* JOHN M. AND DAVID C.

*In re* RONALD R.

CITY OF LACONIA

v.

LACONIA DISTRICT COURT *& a.*

December 29, 1982

1122

*Charles H. Morang*, city attorney, and *David S. Park*, assistant city attorney, by brief, and *Mr. Morang* orally, for the City of Keene.

*Cristiano, Kromphold, Green, McMahon & Heed*, of Keene (*Peter W. Heed* on the brief and orally), for John M.

*Gregory H. Smith*, attorney general (*Betsy S. Westgate*, assistant attorney general, on the brief and orally), for the State.

*Stanley, Tardif & Shapiro*, of Concord (*R. Peter Shapiro* on the brief), by brief for Rivendell, Inc.

*Decker, Fitzgerald & Sessler P.A.*, of Laconia (*James N. Sessler* on the brief and orally), for the City of Laconia.

*Michael R. Randall*, of Laconia, by brief and orally, for the Belknap County Commissioners.

*Shaheen, Cappiello, Stein & Gordon*, of Concord (*Robert A. Stein* on the brief and orally), for the County of Merrimack, as amicus curiae.

DOUGLAS, J. These consolidated cases present important issues of statewide concern regarding the State's juvenile laws, RSA chapters 169-B, 169-C, and 169-D. The questions involve whether the delinquent or neglected children in these cases were properly placed, and which governmental units are ultimately liable for the expenses of placement and maintenance.

I. *John M. and David C.: Placement Standards.*

On August 21, 1981, John M. was adjudicated delinquent by the Keene District Court (*Davis*, J.) and was given a ninety-day suspended sentence at the Cheshire County House of Correction for what would be the crimes of burglary and possession of a controlled drug, had those crimes been committed by an adult. Because John M. has a learning disability, the court placed him at the Danvers Institute for Family and Life Learning in Danvers, Massachusetts. *See* RSA 169-B:19, I(f) (Supp. 1981). The City of Keene was found to be the unit legally liable for John M.'s expenses. *See* RSA 169-B:40, I (Supp. 1982).

David C. was adjudicated delinquent by the Keene District Court (*Davis*, J.) and was committed to the Youth Development Center (YDC) for the term of his minority. *See* RSA 169-B:19, I(i) (Supp. 1982). The YDC subsequently placed David C., who also has a learning disability, at the Danvers Institute. David C.'s expenses were ordered to be charged to the City of Keene as the legally liable unit. *See* RSA 169-B:40, I (Supp. 1982); RSA 621:22 (Supp. 1981).

At a hearing in district court on the issue of liability, *see* RSA 169-B:40, II (Supp. 1982), the City of Keene objected to the placement of John M. and David C. and contested its liability for their expenses on the ground that RSA 169-B:19, I(f) (Supp. 1981) prohibits their placement, as delinquents, in a facility with abused or neglected children, or with children in need of services (CHINS). The parties agreed that twenty children at the Danvers Institute fell into categories other than delinquent. The district court transferred the case here without ruling on whether the placements of John M. and David C. violated the delinquent children statute.

RSA 169-B:19, I(f) (Supp. 1981) provides:

"If the court finds that a minor is delinquent, the court may . . . [r]elease the minor in the care and supervision of a group home, crisis home or shelter care facility, *which is not used* for the placement of children in need of services or a child found to be abused or neglected, with expenses charged according to RSA 169-B:40."

(Emphasis added.)

The city contends that the district court violated a clear legislative *mandate* not to place delinquents with other problem children. That the legislature was concerned about mingling delinquent with non-delinquent children is reflected in the separate procedures created for dealing with delinquent children, abused or neglected children, and CHINS. RSA 169-B:19, I(f) (Supp. 1981), governing the placement of delinquents, reflects the same concern. In light of the limited number of specialized treatment facilities provided by or in the State of New Hampshire, however, we cannot read RSA 169-B:19, I(f) (Supp. 1981) as categorically as the city would have us do.

RSA 169-B:19, I(f) (Supp. 1981) was part of a recodification of the State's juvenile laws in 1979, in which the legislature eliminated the more compelling language of provisions such as former RSA 169:13-a, I (LAWS 1975, 502:8), governing the disposition of persons in need of supervision:

"When a child is found to be a person in need of supervision, the court may place such child in a shelter care facility designated in this paragraph, *if such facility is not one* in which children alleged or adjudicated to be delinquent may be detained or committed under this chapter . . . ."

(Emphasis added.) The legislature appears to have been aware of the shortage of specialized treatment facilities in the State when it amended the juvenile laws.

█ We conclude that the new language of RSA 169-B:19, I(f) (Supp. 1981) is directory only, manifesting a legislative *preference* that, whenever possible, delinquent juveniles should not be mingled with CHINS, or with abused or neglected children. *See In re Russell C.*, 120 N.H. 260, 264, 414 A.2d 934, 936 (1980). We assume, however, that district court judges or the YDC authorities will first exhaust the possibility of making appropriate in-State placements before issuing any order directing out-of-State placement of juveniles. The Keene District Court's placement of John M. at the Danvers Institute does not appear to be improper.

The City of Keene seeks to avoid liability for the expenses of David C., also a delinquent, on the same ground, claiming that the YDC had no authority to place him at the Danvers Institute with other, non-delinquent children. The State responds that the YDC board of trustees has broader child-placement powers under RSA chapter 621 than does the district court under RSA 169-B:19, I(f) (Supp. 1981). The State therefore claims that it is not bound by the limiting language of the delinquency statute. Because of our holding that RSA 169-B:19, I(f) (Supp. 1981) is directory only, however, we need not address the State's argument that the YDC trustees have broader powers than the district court to place delinquent children out of State.

■■ We reject the State's assertion, though, that the YDC board of trustees' authority to place delinquent children outside New Hampshire is defined exclusively by RSA chapter 621. The legislature has enacted statutory procedural requirements for the out-of-State placement of children. RSA chapter 170-A, entitled "Interstate Compact on the Placement of Children," provides:

> "A child adjudicated delinquent may be placed in an institution in another party jurisdiction pursuant to this compact but *no such placement shall be made unless the child is given a court hearing on notice to the parent or guardian with opportunity to be heard, prior to his being sent to such other party jurisdiction for institutional care....*"

RSA 170-A:1, VI (emphasis added). The reference to RSA chapter 170-A contained in RSA 169-B:19, II (Supp. 1981) does not compel the conclusion that the interstate compact controls only the district court's out-of-State placement of delinquent juveniles. The out-of-state placement of a delinquent child can significantly deprive that child of the opportunity to retain contact with his parents and family. The placement of David C. at the Danvers Institute without a court hearing, as mandated by RSA 170-A:1, VI, was improper.

■■ Nevertheless, the City of Keene is still legally liable for David C.'s expenses while he was at the Danvers Institute. RSA 621:22 (Supp. 1981) directs that liability for expenses incurred incident to the placement of a child by the YDC trustees shall be determined under RSA 169-B:40. RSA 169-B:40, I (Supp. 1982) provides that the town in which a minor resides when a juvenile petition is filed is liable for any expenses incurred "[*w*]*henever* an order creating liability for expenses is issued by the court under this chapter . . . ." (Emphasis added.) A town's challenge to a liability

order is not intended to be a vehicle for a full-scale review of "the court's dispositional order or the appropriateness of same." Harkaway, Bianco, Leidinger, and Barry, *New Hampshire Juvenile Justice Code of 1979: An Overview*, 21 N.H.B.J. 45, 62 (1980). The limited scope of the liability hearing under RSA 169-B:40, II (Supp. 1982) is evidenced by the fact that an appeal from a dispositional order of delinquency, pursuant to RSA 169-B:29 (Supp. 1981), may be taken only by the minor involved.

## II. *Ronald R.: Municipal Liability for Expenses.*

On February 11, 1980, the Keene District Court (*Davis*, J.) found Ronald R. to be a neglected child and placed him in the temporary custody of the New Hampshire Division of Welfare. *See* RSA 169-C:19, I(b) (Supp. 1981). The City of Keene, as the legally liable unit, was ordered to pay Ronald R.'s expenses. *See* RSA 169-C:27, I (Supp. 1982). Shortly thereafter, a delinquency petition was filed against Ronald R. in Keene District Court, and on May 22, 1980, after several unsuccessful placements in foster homes, Ronald R. was temporarily placed at the Rivendell School in Loudon pending an adjudicatory hearing on the delinquency petition, scheduled for September 1980. *See* RSA 169-B:14 (Supp. 1981). The City of Keene agreed that it was the liable unit during that period. There is no indication in the record before us that this delinquency petition was ever acted upon.

On June 26, 1980, Ronald R.'s mother, who had had custody of him for a number of years before February 11 of that year, moved to Concord. That same day, while still residing at the Rivendell School, Ronald R. and others were involved in a burglary in Loudon, which brought him into Concord District Court on a new delinquency petition. On October 27, 1980, the Concord District Court (*Robbins*, J.) adjudicated Ronald R. delinquent and returned him temporarily to the Rivendell School pending commitment to the YDC for the term of his minority. *See* RSA 169-B:19, I(i) (Supp. 1982). The City of Keene was continued as the legally liable unit.

After a financial liability hearing, the district court held on November 6, 1980, that the fact that Ronald R.'s mother had moved from Keene to Concord, prior to the filing of the latest delinquency petition, was not dispositive as to which city was the legally liable unit. The court found that Ronald R. was a resident of Keene at the time he was placed at the Rivendell School under the custody of the division of welfare, and thus the City of Keene should continue to pay for Ronald R.'s expenses. The Rivendell School subsequently filed a petition in Concord District Court to compel the City of Keene to pay $9,600 for Ronald R.'s expenses, contending that the

school should not have to wait for the city to be indemnified by some other governmental unit before it was paid. These consolidated liability issues are before this court on an interlocutory appeal.

■ The City of Keene contests its liability to the Rivendell School for Ronald R.'s expenses on two grounds. First, the city asserts that the mingling of delinquent children with CHINS and abused or neglected children at Rivendell precluded Ronald R.'s temporary placement there as a neglected child by the Keene District Court, or his temporary placement there as a delinquent child by the Concord District Court. Our holding in the case of John M. and David C., that RSA 169-B:19, I(f) (Supp. 1981) is directory only, is dispositive of that issue in this case.

Second, the City of Keene argues that, because Ronald R.'s mother had moved from Keene to Concord before the delinquency petition against him was filed in Concord District Court, it should not be liable for Ronald R.'s expenses at the Rivendell School. The community that is legally liable for the expenses incurred pursuant to a dispositional order of delinquency or neglect is that "in which the minor resides at the time the petition is filed . . . ." RSA 169-B:40, I (Supp. 1982); 169-C:27, I (Supp. 1982); see RSA 169-D:29, I (Supp. 1982).

"While it is true that the words 'residence' and 'resides' are slippery words having many meanings," *Ebelt v. Ebelt*, 103 N.H. 369, 371, 172 A.2d 363, 365 (1961), in the context of the liability provisions of the State's juvenile laws it is clear that, at the time of the petition of neglect in Keene District Court and the delinquency petition in Concord District Court, Ronald R. resided with his mother, who had had legal custody of him before he was temporarily placed in State custody. In its neglect order of February 11, 1980, the Keene District Court stated: "Custody of [Ronald R. is] to remain with the Division of Welfare until such time as [this] Court deems it appropriate to return custody of [him] to [his] mother." Because custody of Ronald R. might have been returned to his mother, he is deemed to have resided with her at all times for the purpose of determining liability under RSA 169-B:40, I (Supp. 1982). *See* RSA 21:6-a (Supp. 1981). Consequently, the location of her residence will determine which community must bear Ronald R.'s expenses at the Rivendell School.

The City of Keene is liable for expenses incurred pursuant to the Keene District Court's order of May 22, 1980, temporarily placing Ronald R., as a neglected child, at the Rivendell School. *See* RSA 169-C:27, I (Supp. 1982). The duration of that order at the most could only have been until September 4, 1980, the date set for an

adjudicatory hearing on the delinquency petition that had been filed in Keene District Court on April 9, 1980. As noted above, the record before us does not indicate whether that petition was ever acted upon.

██ During Ronald R.'s temporary placement at the Rivendell School, his mother moved to Concord, he was involved in a burglary in Loudon, and a delinquency petition was filed against him in Concord District Court on July 1, 1980. That court subsequently adjudicated Ronald R. delinquent. The City of Keene thus would not be the legally liable unit pursuant to RSA 169-B:40, I (Supp. 1982) for expenses incurred as a result of any Concord District Court order because Ronald R.'s mother was living in the Concord area before the petition against her son was filed on July 1, 1980. Accordingly, Ronald R.'s expenses at the Rivendell School must be apportioned between the City of Keene, which is liable for pre-July 1 expenses, and the city or town of residence of Ronald R.'s mother after she moved from Keene, which is liable for all post-July 1 expenses.

██ The Rivendell School petitioned the Concord District Court for an order compelling the City of Keene to pay $9,600 prior to the completion of any indemnification action, for expenses incurred in the maintenance and care of Ronald R. When the legislature amended the juvenile laws to place the financial responsibility of any placement initially on the town and not on the parents, it clearly indicated that the guarantee of adequate care of problem juveniles depends upon prompt payment by the legally liable unit. *See Ebelt v. Ebelt,* 103 N.H. at 371, 172 A.2d at 365; Harkaway, Bianco, Leidinger, and Barry, *New Hampshire Juvenile Justice Code of 1979: An Overview,* 21 N.H.B.J. at 62, 77. On remand, then, the City of Keene, and the city or town which is found to be the appropriate legally liable unit for Ronald R.'s post-July 1 expenses, must pay the expenses and then pursue any claims for reimbursement.

██ We note that the legislature has provided for two additional sources of recovery. Effective March 17, 1982, either the town or city of settlement of the custodial parent or parents, or the county in which the custodial parent or parents reside if they do not have a settlement, will be ultimately liable for the expenses of placing problem children. RSA 169-B:40, I (Supp. 1982); 169-C:27, I (Supp. 1982); 169-D:29, I (Supp. 1982). This means that for expenses incurred after March 17, 1982, for the first time a city or town of residence may now seek reimbursement from a city or town of settlement. The statutory amendment merely continues the right of

a city or town of residence to seek reimbursement from a county if the parent has no settlement, but expressly provides for that right of indemnification without reference to the State's general welfare laws.

■ For expenses incurred prior to March 17, 1982, recovery can only be sought "against the person chargeable by law for the minor's support and necessities." Given this express statutory amendment and a fair reading of the word "person," we hold that a city or town of residence may not seek reimbursement from a city or town of settlement for expenses incurred under RSA chapters 169-B, 169-C and 169-D prior to March 17, 1982. As will be explained in the next section, a city or town of residence may seek recovery from a county, under the State's general welfare laws, for such expenses predating the statutory amendment.

III. *The Laconia Case: Town and County Liability.*

The Laconia case arises from a finding by the Laconia District Court (*Martin*, S.J.) that three children from separate families were either abused or neglected and should be placed in the custody of the division of welfare. *See* RSA 169-C:19, I(b) (Supp. 1981). The City of Laconia was ordered to pay the foster-care expenses for each child pursuant to RSA 169-C:27, I (Supp. 1982).

At the hearing on the issue of liability, *see* RSA 169-C:27, II (Supp. 1982), the City of Laconia established that none of the children's parents was able to reimburse the city for the resulting expenses imposed, nor did they have legal settlement pursuant to RSA 164-A:1, I (Supp. 1981), since they had not lived in the city for one year. The city argued that, because RSA 169-C:27, I (Supp. 1982) treats payments made in behalf of a child as "assistance to a pauper as to the person chargeable by law for the child's support," and because the children's parents never obtained legal settlement in the city, the parents were therefore county paupers, *see* RSA 166:1, I (Supp. 1981). Consequently, the city maintained that the County of Belknap was ultimately liable for the children's expenses. *See* RSA 165:20 (Supp. 1981).

The Laconia District Court ordered the City of Laconia to pay the expenses of the three children, noting that it "in turn can seek reimbursement from the responsible person." The city appealed to Superior Court (*Cann*, J.), which transferred to this court without ruling certain questions regarding liability.

The City of Laconia does not question its *initial* liability under RSA 169-C:27, I (Supp. 1982) for the expenses of three children found by the Laconia District Court to be abused or neglected. The city does contest its *ultimate* liability, however, on the ground that

none of the children's parents had established legal settlement in the city pursuant to RSA 164-A:1, I (Supp. 1981). Therefore, the city asserts that it may recover its expenses from the County of Belknap pursuant to RSA 165:20 (Supp. 1981) for assistance to county paupers.

■■ Before discussing the merits of the city's argument, however, we must address the Belknap County Commissioners' contention that RSA 169-C:28 (Supp. 1981) does not provide a statutory basis for allowing the city to appeal the district court's liability order to superior court, where this interlocutory appeal originated. Although the city would qualify as a "party having an interest" within the meaning of RSA 169-C:28 (Supp. 1981), we agree with the county commissioners that the legislative intent of this provision was only to allow for appeals regarding final *dispositional orders* of abuse or neglect. In the future, any relief from district court *liability orders* can only be obtained by a petition for a writ of certiorari. Because we have not previously ruled on the scope of appeals under RSA 169-C:28 (Supp. 1981), and because of the important questions presented in this case, we will decide this interlocutory appeal. *See Wood v. General Elec. Co.*, 119 N.H. 285, 288, 402 A.2d 155, 157 (1979); *Chesley v. Estate of Chesley*, 117 N.H. 280, 282, 372 A.2d 281, 283 (1977).

The crux of the City of Laconia's claim is that RSA 169-C:27 (Supp. 1982) is not a self-contained provision for determining liability for expenses under RSA chapter 169-C, and that it may seek reimbursement from the County of Belknap under the State's general welfare laws, RSA chapters 164-A, 165, and 166. The county commissioners dispute this contention, arguing that the legislature intended the State's juvenile laws to be specific remedies for the care of problem children and that financial liability under RSA chapters 169-B, 169-C, and 169-D should be determined independently of the State's general welfare laws. We agree with the city that ultimate liability for the placement of delinquent children, abused or neglected children, and CHINS should be determined by reference to the general welfare laws.

As the community of the children's residence, the City of Laconia is liable in the first instance for their placement expenses. RSA 169-C:27, I (Supp. 1982), as well as the correlative liability sections of the delinquency and CHINS statutes, then gives the city a right of recovery against the children's parents. Because the city in this case cannot collect from the parents the payments which it made in the children's behalf, "the payments shall be considered assistance to . . . pauper[s] as to the . . . [parents] and . . . [they] shall be subject to a

loss of *settlement* in accordance with the provisions of RSA 164-A:5." RSA 169-C:27, I (Supp. 1982) (emphasis added).

 "Settlement" is a term of art and is nowhere defined in the juvenile laws; in order to understand the remedy contained within the liability sections of those laws, reference must be made to the general welfare laws, where the term takes on legal significance. In addition, "loss of settlement" only makes sense if a person first gains a settlement pursuant to RSA 164-A:1, I (Supp. 1982)—in this case, through the parents' residence in the city of Laconia for one year without receiving pauper assistance from the city during that time. *See* RSA 164-A:4. Thus, since the parents never gained legal settlement in the city, they are county paupers, meaning "those for whose support no person or town in this State is chargeable . . . ." RSA 166:1, I (Supp. 1981). Consequently, the county is liable for their support, *see* RSA 166:10 (Supp. 1981), and the City of Laconia has a right to reimbursement from the County of Belknap pursuant to RSA 165:20 (Supp. 1981). *See In re Eva S.*, 121 N.H. 847, 850–51, 435 A.2d 838, 840 (1981).

If the parents had gained legal settlement in the city of Laconia by living there for one year without receiving pauper assistance, then the city would have been ultimately liable for the children's expenses for the first 365 days, *see* RSA 169-C:27, I (Supp. 1982), and would have had a right to be indemnified by the county thereafter. *See* RSA 166:10 (Supp. 1981); 165:20 (Supp. 1981). This interpretation of the interaction between the juvenile laws and the general welfare laws is borne out by the 1981 amendments to RSA 169-B:40, I, 169-C:27, I, and 169-D:29, I which state:

> "If a town cannot collect for such payments made in behalf of a child, the payments shall be considered assistance to a pauper as to the person chargeable by law for the child's support and necessities and such person shall be subject to a loss of settlement in accordance with the provisions of RSA 164-A:5 *provided that such person has a settlement in such town.*"

(Emphasis added.)

Our reading of the interrelation of the juvenile and general welfare laws is not contrary to our holding in *Juvenile Case #1089*, 119 N.H. 64, 398 A.2d 65 (1979), where we stated: "[S]ettlement law is irrelevant to any issue involving the support of a neglected child. General support liability for neglected children is determined exclusively under the provisions of [former] RSA ch. 169." *Id.* at 66, 398 A.2d at 67. In that case, we were passing only upon the claim that a child's residence, for the purpose of fixing liability for tuition

for handicapped children under former RSA chapter 186-A (current version at RSA chapter 186-C (Supp. 1981)), should have been determined by application of the settlement law under RSA chapter 164-A. In the instant case, we are squarely confronted with the question of liability for expenses under the State's juvenile laws, a statutory scheme entirely distinct from the special education laws, RSA chapter 186-C.

In summary, we hold that the City of Laconia initially is the legally liable unit for the placement expenses incurred in this case, pursuant to RSA 169-C:27, I (Supp. 1982). Because the children's parents never gained a legal settlement in the City of Laconia pursuant to RSA 164-A:1, I (Supp. 1981), however, they are county paupers as defined by RSA 166:1, I (Supp. 1981), and the city has a right to reimbursement under RSA 165:20 (Supp. 1981) for all payments made for the children's expenses.

IV. *Conclusion.*

These cases all involve a confluence of laws regarding problem children as well as the problem of when and where local and county funding begins and ends. We have attempted to interpret the law consistent with what we have concluded to be legislative intent. Further legislative clarification is welcomed in this tangled area of the law.

*Remanded.*

All concurred.