Manchester District Court
No. 82-377

*In re* BRYAN L.

June 15, 1983

*Elmer T. Bourque,* city solicitor (*James M. Warren* on the brief and orally), for the City of Manchester.

*Moulton, Smith, Samaha & Vaughan P.C.,* of Littleton (*Michael M. Ransmeier* on the brief and orally), for the Littleton School District.

KING, C.J. This appeal requires us to determine which school district is liable for the special educational expenses of Bryan L., an educationally handicapped child who has been committed to the Youth Development Center (YDC) for the duration of his minority.

Bryan L. was committed to the YDC for the duration of his minority on May 12, 1981, after being adjudicated delinquent. *See* RSA ch. 169-B (Supp. 1981). Prior to his commitment he lived with his parents in Manchester and attended school in the Manchester School District, which district determined that Bryan was educationally handicapped. *See generally* RSA 186-C:2, I (Supp. 1981).

In September 1981, Bryan's parents moved to Littleton. In January 1982, the YDC requested a hearing in Manchester District Court to determine which school district, Manchester or Littleton, was liable for Bryan's special educational expenses. The Trial Court (*Capistran*, J.) rendered a decision on May 26, 1982, holding Manchester liable for these expenses.

The City of Manchester filed a motion for reconsideration on the ground that the court had not applied the controlling law, because the applicable statute, RSA 186-C:13, had been amended, the amended version of RSA 186-C:13 (Supp. 1982) becoming effective on May 22, 1982. The court granted the motion, and a second hearing was held. After this hearing, the trial court issued an order on July 21, 1982, holding the Littleton School District liable for Bryan's special educational expenses, and the Littleton School District appealed. We affirm.

RSA 186-C:13 (Supp. 1982), which governs liability for the educational expenses of educationally handicapped children, provides: "All expenses incurred by a school district in administering the law in relation to education for educationally handicapped children shall be paid by the school district where the child resides . . . ." There are two exceptions to this rule, neither of which, the parties concede, is applicable in this case.

The Littleton School District argues that Bryan "resides" at the YDC, and therefore that Manchester is liable for his special educational expenses. We reject this argument. The legislature has defined "residence" for purposes of statutory construction as follows:

"Residence or residency shall mean a person's place of abode or domicile. The place of abode or domicile is that designated by a person as his principal place of physical presence for the indefinite future to the exclusion of all others. Such residence or residency shall not be interrupted or lost by a temporary absence from it, if there is an intent to return to such residence or residency as the principal place of physical presence."

RSA 21:6-a (Supp. 1981). It is clear from this definition that Bryan does not "reside" at the YDC, because it is not his principal place of

physical presence for the indefinite future. Bryan has been committed to the YDC only until the duration of his minority.

We recently interpreted the word "resides" for purposes of RSA 169-B:40, I (Supp. 1982). In *In re John M. and David C.*, 122 N.H. 1120, 1126–28, 454 A.2d 887, 890–91 (1982), we were required to determine which town was liable for a minor's expenses at the Rivendell School. In that case, the minor lived with his mother in Keene prior to being adjudicated a neglected child. Soon after the neglect finding, a delinquency petition was filed against the minor in Keene District Court, and he was placed in Rivendell School pending an adjudicatory hearing on the delinquency petition. The minor's mother then moved to Concord, and soon thereafter a second delinquency petition was brought in Concord District Court.

RSA 169-B:40, I (Supp. 1982) required us to determine the town in which the minor "resided" at the time of the second delinquency petition in order to determine which town was liable for the minor's expenses. We held that, although the division of welfare had temporary legal custody of the minor, the minor "resided" with his mother because custody of him might have been returned to her and, accordingly, we held that the town in which the mother was living was responsible for his expenses. *Id.* at 1127, 454 A.2d at 891.

We find the reasoning of *In re John M. and David C.* instructive. In this case, while the YDC had *physical* custody of Bryan, it did not have *legal* custody of him. Neither RSA 169-B:19, I(h) (Supp. 1981), which provides that a delinquent child may be committed to the YDC for his minority, nor RSA chapter 621 (Supp. 1981), governing the operation of the YDC, indicates that a parent does not retain legal custody when a delinquent child is committed to the YDC. In contrast, RSA 169-C:19, I(b) (Supp. 1981) of the Child Protection Act explicitly provides that a court may transfer *legal* custody of an abused or neglected child to a child-placing agency or relative. Accordingly, we believe that if the legislature had intended to deprive parents of legal custody of a child when the child was committed to the YDC, it would have explicitly so provided.

Because Bryan's parents retained legal custody of him, he is deemed to have "resided" with them for purposes of liability under RSA 186-C:13 (Supp. 1982). *See In re John M. and David C.*, 122 N.H. at 1127, 454 A.2d at 891.

*Affirmed.*

All concurred.