Merrimack
No. 82-080

*In re* GARY B.

October 5, 1983

*Orr & Reno P.A.*, of Concord (*Mary Susan Leahy* on the brief), by brief for the plaintiffs, guardian ad litem and surrogate parent of Gary B.

*Gregory H. Smith*, attorney general (*James E. Townsend*, assistant attorney general, on the brief), by brief for Robert L. Brunelle, Commissioner of Education.

*Soule, Leslie, Bronstein & Zelin*, of Salem (*Gerald M. Zelin* on the brief), by brief for the Epsom School District.

*Casassa, Mulherrin & Ryan*, of Hampton (*Peter J. Saari* on the brief), by brief for the Hampton School District.

BROCK, J.  This appeal from an order of the superior court on a petition for declaratory judgment requires us to determine which school district is liable for special education expenses, and which district must develop an individualized education plan, for Gary B., an educationally handicapped child.

Upon the recommendation of the Master (*David H. Bradley*, Esq.), the Superior Court (*Souter*, J.) approved an order placing all responsibility for the the child's educational expenses and program on the Hampton School District. We affirm.

Gary was born in December 1966. After living with his parents in Concord and then with his mother in Penacook, he lived in a series of hospitals, foster homes, and group care homes from April 1967 until December 1979. During that time, both of his parents relinquished their parental rights, and the Concord District Court in 1971 awarded legal custody to the New Hampshire Division of Welfare in accordance with RSA chapter 169.

From 1971 until December 1979, Gary lived in a foster family group home in Epsom. On December 22, 1979, the division of welfare placed him with a married couple in Hampton who wished to adopt him. The Rockingham County Probate Court granted the couple's petition to adopt Gary on February 26, 1980, the decree to become final on December 17, 1980. The couple acquired legal custody of Gary on March 26, 1980, when the Concord District Court rescinded its 1971 order granting custody to the division of welfare. The couple did not obtain a license under RSA chapter 170-E, and their home therefore did not qualify as a "home for children" under RSA 193:27, I (Supp. 1981).

After serious difficulties arose in the couple's relationship with Gary, the Rockingham County Probate Court dismissed the petition for adoption at the couple's request on October 27, 1980, before the decree had become final. Legal custody returned to the division of welfare in November 1980. In December 1980, Gary became a patient at the New Hampshire Hospital. He later returned to the group home in Epsom where he had lived from 1971 to 1979. Finally, on May 27, 1981, the division of welfare placed him at the Cardinal Cushing School and Training Center in Hanover, Massachusetts.

The dispute in this case involves liability for Gary's special education expenses accruing after September 1, 1981. Associated with this liability is a duty, created by RSA 186-C:7 (Supp. 1981), to develop an individualized education plan (IEP) for Gary. The resolution of this question depends on the effect of two acts of the 1981 legislature: Laws 1981, ch. 326 (inserting RSA 193:27 to :29), and 574:6 (amending RSA 186-C:13).

Although chapter 574, section 6 became effective on July 1, 1981, the parties have conceded that this case only concerns expenses accrued after September 1, 1981, when chapter 326 became effective. It is unnecessary for us to decide whether these two statutes were consistent with each other prior to their amendment effective May 22, 1982. None of the parties has disputed the master's ruling that the statutes control the assignment of liability for all expenses incurred after September 1, 1981, and place it on "the district in which the child last resided before placement in a home for children, health care facility, or state or private institution." Laws 1981, 574:6. Because of Gary's one-year stay in Hampton, the court found that the Hampton School District was the district where Gary "last resided before placement." Accordingly, the court ruled that Hampton was liable for all the disputed expenses, and also ordered Hampton to develop an IEP for Gary. Hampton appeals.

The central dispute involves the meaning to be given the word "resided" as used in the statute. Hampton argues that we must construe "resided" to conform with the definitions of "resident" and "residence" contained in RSA 21:6 and RSA 21:6-a, respectively. Those definitions equate a person's residence with his "domicile," and would demand an inquiry into his intent to remain in one place of abode "as his principal place of physical presence for the indefinite future to the exclusion of all others." RSA 21:6 (Supp. 1981). In the case of a minor's "residence," the relevant intent would be that of the parent or guardian having legal custody. *In re Bryan L.*, 123 N.H. 420, 462 A.2d 108 (1983).

■ We find no reason to disturb the master's conclusion that requiring such an inquiry into *intent* in the context of RSA 186-C:13 and RSA 193:27 to :29 (Supp. 1981) would create an unworkable test for applying those statutes. In adopting these statutes, the legislature sought: first, to alleviate the unfair financial burden which previous laws had placed on school districts in which there were group homes or other child care facilities, and second, to ensure that the education of handicapped children "will not be interrupted by disputes between school districts over their financial liability." *See, e.g.,* 1981 Senate Education Committee Minutes, HB 604, May 12, 1981, prepared remarks of Rep. Taffe, p. 1.

■ Attempting to apply an intent test for residence in this context would nullify these purposes to an appreciable extent; we therefore reject that construction of the statutes. *State v. Kay,* 115 N.H. 696, 350 A.2d 336 (1975); *see also* RSA 21:1. In *Ebelt v. Ebelt,* 103 N.H. 369, 172 A.2d 363 (1961), we dealt with a statute that provided for the support of needy children after the divorce of their parents. What we said in *Ebelt,* in construing RSA 458:18, applies equally to the statutes involved here: "While it is true that the words 'residence' and 'resides' are slippery words having many meanings, it is reasonably evident that they were used in this statute to mean . . . something less than domicile." *Id.* at 371, 172 A.2d at 365; *see also Juvenile Case #1089,* 119 N.H. 64, 67, 398 A.2d 65, 67 (1979). We have also held that, as long as a student's residence is bona fide, statutes whose overriding policy is to provide all children in a State with a free education "should be construed liberally to that end." *Luoma v. Keene School District,* 106 N.H. 488, 490, 214 A.2d 120, 121 (1965).

■ The statutes involved in this case are ambiguous. In view of the legislative purposes behind those statutes, discussed above, we must resolve any ambiguity in favor of the interpretation that will carry out those purposes most effectively. Accordingly, we hold:

1) that "resided" in this context refers to the place where a child actually lived (*see Juvenile Case #1089, supra*), rather than to legal residence or domicile;

2) that the phrase "the district in which the child last resided before placement in a [facility]" means the place where the child most recently lived outside of a facility;

3) that these statutes apply regardless of the date on which a child was placed in a home for children, health care facility, etc.; and

4) that the Hampton School District is therefore liable for

Gary's expenses at Cardinal Cushing School since September 1, 1981, and is also obligated to develop an IEP for him.

Hampton argues that such an interpretation would violate the State constitutional prohibition against retrospective laws. N.H. CONST. pt. I, art. 23. Public entities such as school districts, however, have no standing to assert any rights under that article. *Town of Nottingham v. Harvey*, 120 N.H. 889, 898, 424 A.2d 1125, 1131 (1980); *Dartmouth College v. Woodward*, 1 N.H. 111, 129 (1817), *rev'd on other grounds*, 17 U.S. (4 Wheat.) 518 (1819).

Finally, we find no basis in law for Hampton's argument that dismissal of the adoption petition in October 1980 terminated all legal incidents of the adoption agreement, including any consequences of Gary's residence in Hampton for one year. Such an argument might be relevant only in connection with a claim that Gary's residence in Hampton was not bona fide. The master in this case found to the contrary, and there is ample evidence in the record to support his finding.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.