Laconia District Court
No. 84-430

*In re* TAMMY S.

July 3, 1985

*Richard P. Brouillard,* of Laconia, by brief for the Town of Belmont.

*Nungesser and Hill,* of Meredith (*Douglas P. Hill* on the brief and orally), for the Town of Gilford.

*Wescott, Millham & Dyer,* of Laconia (*Peter V. Millham* on the brief and orally), for the Town of Sanbornton.

BATCHELDER, J.   We are asked to decide whether the Laconia District Court (*Huot,* J.) properly ruled that Gilford was the town of residence, under RSA 169-B:40, I (Supp. 1983), of Tammy S. on December 16, 1983, when a petition of delinquency was filed with the court. We reverse.

A recalcitrant fourteen-year-old, Tammy has been virtually beyond the control of authorities, her mother, relatives, and friends. The record reveals that Tammy ran away from the home of her godmother, a youth home, and a foster home, twice stole a car, repeatedly "terrorized" her grandmother, was twice placed in the Youth Development Center (YDC), and stayed for various lengths of time with different friends and relatives, including her aunt Virginia Page in Gilford.

On the basis of this record, the court concluded, "After careful consideration of the voluminous records of the court, the learned and concise memoranda of the parties, and the discussion at the hearing, the court emerges from the labyrinth of placements and runnings away and finds itself in the town of Gilford." This conclusion resulted from the court's factual finding "that the minor voluntarily took up residence at the home of Virginia Page in Gilford on or

about November 24, 1983 and intended to make that her residence for the indefinite future."

Under the juvenile laws, a determination of a child's residence is significant because the locality of residence is initially liable for certain costs of care provided under the statutes. RSA 169-B:40, I (Supp. 1983) (delinquency); RSA 169-C:27, I (Supp. 1983) (child abuse or neglect); RSA 169-D:29, I (Supp. 1983) (child in need of services); RSA 186-C:13 (Supp. 1983) (special education). The parties to this appeal are the three towns which might reasonably be regarded as chargeable under RSA 169-B:40, I (Supp. 1983) with the costs of Tammy's care incident to an adjudication of her delinquency: Gilford is the home of Tammy's aunt, with whom Tammy was staying just prior to the filing of the delinquency petition; Belmont is the town in which Tammy was taken into custody; and Sanbornton is the town where Tammy's mother resides. Upon a review of the applicable law and of the record, we hold that Sanbornton is the residence of Tammy for the purposes relevant here.

▄ The legislature has defined "residence" for the purposes of statutory construction as follows:

> "Residence or residency shall mean a person's place of abode or domicile. The place of abode or domicile is that designated by a person as his principal place of physical presence for the indefinite future to the exclusion of all others. Such residence or residency shall not be interrupted or lost by a temporary absence from it, if there is an intent to return to such residence or residency as the principal place of physical presence."

RSA 21:6-a (Supp. 1983). The district court employed this definition when it held that Gilford was Tammy's residence on the basis of its finding that she "intended to make [Gilford] her residence for the indefinite future." We have held, however, that the use of a child's intent to determine her residence is "an unworkable test." *In re Gary B.*, 124 N.H. 28, 32, 466 A.2d 929, 931 (1983) (reviewing residency determination under RSA 186-C:13 (Supp. 1981)). This is particularly true where the child, like Tammy, has exhibited a tendency not to remain in any one place for any appreciable length of time. Indeed, after stating that she wished to live with her aunt, Tammy continued her nomadic ways. An application of an intent test also contravenes the principle that an unemancipated minor cannot normally establish a domicile other than that of her parents or guardian. *See White v. White*, 77 N.H. 26, 29, 86 A. 353, 355 (1913); *Hart v. Lindsey*, 17 N.H. 235, 243 (1845). In rejecting the

intent of the child as a basis for determining the child's residence, we find that the nature of the parent-child relationship and the objective circumstances of her living or placement situation are more appropriate areas for inquiry.

Our case law consistently holds that, absent circumstances or law requiring a different conclusion, a child's locality of residence is that of her parents. *See In re Bryan L.*, 123 N.H. 420, 462 A.2d 108 (1983); *In re John M. and David C.*, 122 N.H. 1120, 454 A.2d 887 (1982). In *In re John M. and David C. supra*, we were asked to determine the town of residence of a minor for the purpose of assigning liability under RSA 169-B:40, I (Supp. 1982) for the expenses of the minor's placement at the Rivendell School. We held that, although the division of welfare had temporary custody of the child pursuant to an earlier adjudication of parental neglect, the child's town of residence was that of his mother. *Id.* at 1127, 454 A.2d at 891. This conclusion was compelled by the facts that the division of welfare had only temporary custody of the child, that the mother had had custody of the child for a number of years shortly before the filing of the delinquency petition, and that custody of the child might be returned to his mother. *Id.* at 1126–27, 454 A.2d at 890–91.

Similarly, in *In re Bryan L., supra* at 422, 462 A.2d at 110, we affirmed a finding that the residence of a minor was that of his parents for the purpose of assigning liability for the expenses of his special education. *See* RSA 186-C:13 (Supp. 1983). The dispositive circumstance in that case was that, although the child was a charge of the YDC pursuant to a delinquency adjudication, no impairment of the parent-child legal relationship had been effected. *Id.*

The cases in which the residence of the child has been held to be different from that of the parents are distinguishable and thus do not disturb our reading of the two cases above. In *In re Gary B.*, 124 N.H. 28, 466 A.2d 929 (1983), the residence of the natural parents was irrelevant because they had a decade earlier relinquished their parental rights. *Id.* at 30, 466 A.2d at 930; *see* RSA 170-B:8. And in *Juvenile Case # 1089*, 119 N.H. 64, 398 A.2d 65 (1979), the residence of the natural parents was not controlling due to the circumstances of the child's placement and to certain statutory provisions. In that case, we affirmed a finding that the Keene School District was the residence of the child for the purposes of the special education statute, RSA 186-A:8 (current version at RSA 186-C:13 (Supp. 1983)), even though the parents resided in Londonderry. *Id.* at 67, 398 A.2d at 67. After being adjudicated neglected, the child had been placed in a foster home within the Keene School District to provide him

with an "appropriate, attentive, and caring environment." *Id.* at 66, 398 A.2d at 67.

Nothing in the opinion suggests any parental involvement with the child. The nature of his foster home placement and this apparent absence of parental involvement by his natural parents indicate that the Keene foster home operated, for all practical purposes, as a substitute for the child's parental home. Also significant was the fact that RSA 198:23 and :24 entitle a school district to State funds for the education of children in foster homes in the district, thus indicating "that the legislature intended that towns in which there are foster homes . . . be held responsible for the education of foster children residing in those homes." *Id.* at 67, 398 A.2d at 67. We therefore held the Keene School District to be the residence of the child for the purposes of the special education statute.

In light of the cases discussed above, we find the following to be important considerations in determining the residence of a child: (1) the extent to which the parent-child legal relationship has been altered, *see In re Gary B., supra* at 30, 466 A.2d at 930; *In re Bryan L.,* 123 N.H. at 422, 462 A.2d at 109–10; *In re John M. and David C.,* 122 N.H. at 1127, 454 A.2d at 891; (2) the extent of parental involvement with the child, *see In re John M. and David C. supra*; (3) the extent to which the parental home has been supplanted for the child by a placement or other living arrangement, *see Juvenile Case #1089, supra* at 66, 398 A.2d at 67; and (4) the existence of laws supporting a finding of residence in a particular location, *see id.* at 67, 398 A.2d at 67. An analysis of the instant case in light of these considerations leads to the conclusion that Tammy, for the purposes of RSA 169-B:40, I (Supp. 1983), resided in Sanbornton, her mother's town of residence.

On December 8, 1982, legal custody of Tammy was transferred from her mother to the division of welfare. *See* RSA 169-C:19, I(b) (Supp. 1983). This custody order did not affect the residual parental rights of Tammy's mother, RSA 169-C:3, XXVII (Supp. 1983), was subject to yearly review, RSA 169-C:24 (Supp. 1983), and could be modified, RSA 169-C:23 (Supp. 1983), to provide, among other things, a return of custody to Tammy's mother, RSA 169-C:24 (Supp. 1983). Although the transfer of legal custody to the division of welfare removed from the mother "[t]he right to determine where and with whom [Tammy could] live," RSA 169-C:3, XVII(a) (Supp. 1983), the mother appears to have continued to be actively involved with Tammy. The mother was scheduled to provide housing for Tammy when foster care was unavailable, took Tammy swimming, accompanied a social worker to pick Tammy up at a Roxbury, Mas-

sachusetts police station, and aided a social worker in discovering Tammy's whereabouts after Tammy had run away. This personal involvement by the mother with Tammy, together with the mother's retention of residual parental rights and the possibility that legal custody might be returned to her, support the conclusion that the towns of residence of mother and daughter are the same. Before finding this to be the case, however, we must consider whether the existence of a nonparental home or statutory provisions require a different conclusion.

The record reveals that on December 16, 1983, the date on which the delinquency petition was filed, *see* RSA 169-B:40, I (Supp. 1983), no placement or other living arrangement operated as a substitute for a parental home. Tammy's nomadic lifestyle propelled her from one location to another. Her stay with her aunt in Gilford, which the trial court found sufficient to establish residency, lasted only about three weeks. When examined in light of her constant wanderings, the inability of her aunt to control her, and the principle that an unemancipated minor cannot normally establish residence in a locality other than that in which the custodial parent or guardian resides, *see Luoma v. Keene School District*, 106 N.H. 488, 490, 214 A.2d 120, 122 (1965), Gilford cannot reasonably be regarded as Tammy's residence.

Finally, we note that we have not been directed to or found any statutory provision that supports a finding that Tammy resided in a locality other than Sanbornton.

■ For the foregoing reasons, we hold that Tammy resided in Sanbornton for the purposes of RSA 169-B:40, I (Supp. 1983), and we accordingly reverse the trial court.

*Reversed.*

All concurred.