Coös,
June 26, 1936.

FRANCIS SHEEHY *v.* MARIE SHEEHY *& a.*

*Raymond K. Perkins, Laurence I. Duncan* and *Robert W. Upton* (*Mr. Perkins* and *Mr. Duncan* orally), for the plaintiff.

*Crawford D. Hening* and *Frank P. Blais* (*Mr. Hening* orally), for the defendants.

WOODBURY, J.  "The jurisdiction of a State to regulate the custody of infants found within its territory does not depend upon the domicile of the parents.  It has its origin in the protection that is due to the incompetent or helpless. ... For this, the residence of the child suffices though the domicile be elsewhere." *Finlay* v. *Finlay*, 240 N. Y. 429, and cases cited.  Furthermore, since the welfare of the child is the controlling consideration and since it is not chargeable with its parent's misconduct, this jurisdiction will be exercised even though the child was brought to this state by its parent fraudulently, and for the purpose of conferring jurisdiction over the question of custody, provided, however, that the child is, as in this case, too young to decide what is best for its own welfare. *White* v. *White*, 77 N. H. 26, 30, 31.

These rules are based upon sound reason and obvious necessity. Were they otherwise, that is if the question of custody could be passed upon only by the courts of the state of the infant's domicile, the temptation would be great to spirit the child beyond reach of the process of that state and thus render the law powerless to cope with the intolerable practice condemned in *Gage* v. *Gage*, 66 N. H. 282, 286, "of snatching an infant ward by each of several guardians when he could see his time."  It follows that the courts of this state have jurisdiction as to the parties.

The next question presented relates to the jurisdiction of the Superior Court as to the subject-matter.  On this point it is argued that the question of custody is within the exclusive jurisdiction of the Probate Court, and that consequently the Superior Court, in giving

temporary custody to the infant's maternal grandparents, was acting in a matter over which it had no jurisdiction. While it is true that *Leclerc* v. *Leclerc*, 85 N. H. 121, stands for the proposition that, in the absence of pending or possible divorce proceedings, the Superior Court has no jurisdiction to appoint a permanent custodian of minors, it is also true that in that same case, (*p.* 125) it is clearly stated that temporary orders of custody may be made by the Superior Court as incidental to its power to "administer the summary and drastic remedy of *habeas corpus.*"

It is further suggested, however, that the court exceeded its jurisdiction in making the statement that "I cannot be unmindful of the fact that a little girl of seven years needs the constant attention which only a mother's love can give and I believe the future welfare of this child requires that she remain in her mother's custody." This is not a permanent award of custody to the mother. It is not a part of the decree at all. It is only an expression of opinion, and as such it is surplusage, without legal or binding effect upon the question of permanent custody. The only actual decree or order which the court made was that which placed the child in the temporary custody of its grandparents.

The plaintiff challenges the authority of the court to make this order upon two grounds. The first of these is that the question of custody is *res adjudicata* as between the parties by virtue of the decree of the New York court.

The writ of *habeas corpus* has two principal functions in the law. It may be used for its original purpose of testing the legality of the restraint imposed upon one who has been deprived of his liberty, or it may be used to determine the question of the right to the custody of a minor. When used for the former purpose the doctrine of *res adjudicata* does not apply. *Petition of Moebus*, 74 N. H. 213. But "when the writ of habeas corpus is used, not as a writ of liberty in the strict and original sense of the term, but only indirectly and theoretically as such, and as a means for inquiring into and determining the rights of conflicting claimants to the care and custody of a minor child, it is generally held that the doctrine of res adjudicata will apply, and where no material change of circumstances is shown to have arisen since the determination of a prior proceeding in habeas corpus, which has been adjudicated in a court of competent jurisdiction, the writ will not be granted by another court as a matter of right." 12 R. C. L. 1255. Freeman, Judgments (5th *ed.*) Vol. II *s.* 829; 15 R. C. L. 872; *Dawson* v. *Dawson*, 57 W. Va. 520; *Knapp* v.

*Tolan*, 26 N. D. 23; *Turner* v. *Turner*, 86 N. H. 463. And such an order or decree of a court of competent jurisdiction in a sister state is entitled to full faith and credit in the courts of this state, but only in so far as there has been no material change in the facts or circumstances upon which that foreign decree was based. *Haynie* v. *Hudgins*, 122 Miss. 838; *Bleakley* v. *Barclay*, 75 Kan. 462; Freeman, Judgments (5th *ed.*) Vol. III, *s.* 1448. The New York decree, then, renders the question of custody *res adjudicata* as between the parents upon the facts as they existed on the date of its rendition, that is, on June 4, 1934, but it has no binding, conclusive, or even persuasive effect as to any events which may have occurred since that date.

As appears in the statement of facts the court below carefully adhered to the foregoing rules. His order giving temporary custody to the grandparents was based definitely and exclusively on "evidence of changed circumstances since the New York decree of June 4, 1934." The court, however, went even further and, upon the plaintiff's objection, excluded all evidence of events which occurred prior to that date. This was more than the plaintiff was entitled to. Although the court could not consider such evidence for the purpose of altering, reconsidering, revising or reversing the New York decree, it was necessary for him to consider it on the question of changed circumstances. Unless the original circumstances are before the court it cannot be told whether or not those circumstances have changed.

Furthermore, the rule has long been firmly established in this state that, in questions of custody, the primary consideration is the present and prospective welfare of the child. *State* v. *Scott*, 30 N. H. 274; *State* v. *Richardson*, 40 N. H. 272; *State* v. *Libbey*, 44 N. H. 321; *Hanrahan* v. *Sears*, 72 N. H. 71; *White* v. *White*, 77 N. H. 26. On this issue the field of inquiry is necessarily broad. *Brown* v. *Jewell*, 86 N. H. 190, 191. Included within this field are the wishes of the child, provided it is sufficiently mature to have any intelligent views or wishes on the subject, and this question of maturity is a preliminary one for the court. If the court determines that the child's views will aid him in promoting its welfare, he may ascertain those views, either by personal inquiry, public or private, or through a committee appointed by him to make inquiry in his stead, whichever, in his discretion, seems the most appropriate procedure to attain the end. *State* v. *Scott, supra*; *State* v. *Richardson, supra*; *Brown* v. *Jewell, supra*.

It is also competent for the court to consider the character and resources of the parents, their fitness, temperamental and otherwise,

for the trust of guardianship and the advantages which may be expected to accrue to the child in the event that custody is given to either of them. On these issues the court may investigate the parent's past conduct as a guide to what may be expected in the future and this investigation into the past is limited, not by the date of some prior decree, but by the application of the broader general rule of remoteness.

The plaintiff's second ground for attack upon the decree is that, in the evidence of changed circumstances, there is nothing to indicate that he has become, since the date of the New York decree, in any way an unfit or improper person to have the custody of his child. This argument proceeds upon the assumption that he is entitled to preferential treatment in the matter of the award of custody over his child. This assumption is erroneous. The mother is the only person entitled to such treatment.

The statute, (P. L., c. 290, s. 4) which makes the parents joint guardians with equal rights over their unmarried minor children does not apply because there is another statute, (P. L., c. 288, s. 9) which gives sole custody to the mother under the precise factual situation presented in the case at bar. The pertinent parts of the statute last cited read as follows: "If a woman, the wife . . . of a citizen of another state, has resided in this state six months successively, separate from her husband, she . . . shall have the exclusive care, custody and guardianship of her minor children living with her in the state . . . ." Construing this statute in harmony with the construction given to P. L., c. 290, s. 4, in *Brown* v. *Jewell*, 86 N. H. 190, 192, and cases cited, and also construing it in harmony with the former common-law rule of custody as expounded in *State* v. *Richardson*, 40 N. H. 272, we are of the opinion that it does not give the mother an absolute right of custody. Her right, in the absence of judicial action, is *prima facie* only, but it is not to be defeated by judicial action unless it is found that she is an unsuitable person for the trust. In the absence of such a finding, she is entitled to custody by force of the statute. *Leclerc* v. *Leclerc*, *supra*; *Brown* v. *Jewell*, *supra*.

In the instant case there is no finding that the mother is either unsuitable or unfit for the custody of her daughter, nor is any such finding compelled by the evidence in the record. It follows, then, that the award of custody to the grandparents, though open to attack by the mother, is not open to attack by the father. In the absence of complaint by the mother the order of the superior court must stand.

It is suggested, however, that this statute should not be applied because the mother in the case at bar was a wrongdoer in bringing her child into this state in violation of the New York order. This argument is refuted by section 11 of that statute which reads as follows: "If the husband of such woman obtains a divorce from his wife in a court or tribunal of any other state or country, . . . she shall retain the exclusive custody and guardianship and receive the earnings of her minor children living with her." Since obtaining a divorce against her presupposes some breach of marital duty on her part, in other words, some wrongdoing, and since the legislature did not see fit to make such misconduct on her part destructive to her rights of custody and guardianship, the conclusion seems obvious that it was not intended that the act should apply only when the mother's conduct has been blameless. The question is whether any particular item of misconduct on her part is sufficient to render her an unsuitable person to have the custody of her children, and this presents a question for the sound discretion of the court below. It cannot be said that the mother's disobedience of the New York decree is enough to render her unfitted, as a matter of law, to have the custody of her child.

The case of *Higgins* v. *Higgins*, 57 N. H. 224, does not militate against this view. That case holds that evidence of fraud on the mother's part in bringing her child into this state is admissible, and, in the opinion of one member of the court may, in the opinion of the others must, prevent her from protecting her custody by means of the extraordinary remedy of an injunction. It falls far short of a holding that such misconduct on the mother's part renders the statute inapplicable to her. It is at most no more than an application of the familiar equitable doctrine that one must come into that court with clean hands.

The order of the superior court must, therefore, be sustained, and it must continue in force until such time as the probate court, in conformity with the principles established in this opinion, passes upon the question of permanent guardianship.

*Case discharged.*

All concurred.