Rockingham,
July 6, 1948. } No. 3739.

JOHN F. PENDERGAST & *a. v.* LEWIS M. TITUS & *a.*

*Thomas J. Morris* and *Charles J. Griffin* (*Mr. Morris* orally), for the plaintiffs.

*Sheehan, Phinney & Bass* (*Mr. Phinney* orally), for the defendants.

DUNCAN, J.  The pertinent statute, cited by the Trial Court, provides in part as follows: "The father and mother of every un-married minor child are joint guardians of the person of such child, and the powers, rights, and duties of the father and mother in regard to such child shall be equal." R. L., *c.* 342, *s.* 4.  The defendants in support of their exceptions rely mainly upon two propositions. They assert that the evidence establishes that the parents are unfitted and unsuitable to have custody of the child, and that it conclusively appears that the welfare of the child requires that she remain in the defendants' custody.  The propositions to which they address them-selves are not distinct, but closely interrelated.  In cases such as these, the welfare of the child has repeatedly been stated to be the controlling consideration. *Sheehy* v. *Sheehy,* 88 N. H. 223, 227, and cases cited.  If custody by the parents is not opposed to the child's welfare, then the legislature has declared the interest of society to be that they should have it. R. L., *c.* 342, *s.* 4.  In *Brown* v. *Jewell,* 86 N. H. 190, 192, this court stated: "To find [a parent] unsuitable, it must appear that the child's welfare demands a change of custody. But the social policy adopted by the legislation and making parentage an essential test of proper custody when it is available and not un-worthy, is controlling.  So long as the parental custody is suitable, it is not to be disturbed by any considerations for those outside the relation."  In terms of this case, to find the parents unsuitable it must appear that the child's welfare demands that they should not have custody.  The issue to be determined by the trier of the facts is not an abstract one, of the suitability of the parents to be custodians of a child, but of their suitability from the standpoint of the welfare of the particular child with whom the proceedings are concerned.

The facts of the case before us do not greatly differ from those of other cases which have been before this court.  The child, now nine, has lived with the defendants since September, 1941.  They have borne substantially all of the expense of her upbringing, having con-sented to care for her when the parents were beset by illness and financial difficulty.  While the child has lived in the vicinity of her parents' home for a major portion of the time, she has been nurtured by the defendants and now gives to them the affection which she

would normally have for her parents. The case is perhaps distinguished by the fact that the child is in poor health, which the knowledge of the pendency of these proceedings has not improved. There was evidence that a change of custody would ultimately result in serious nervous disorder.

The case is close. The issues have been decided adversely to the defendants. The possibility that the finding that the plaintiffs are "suitable and fit in their capacity as parents and guardians" was made without proper consideration for the welfare of the child does not appear upon this record to be a real one. The hearing was commenced in June, and on the second day, after discussion by Court and counsel of the "question of the child's welfare," followed by a conference between the Court and the parties personally, trial was adjourned until fall under a temporary order for alternate custody, entered in the hope that a less drastic solution would present itself. The hearing was resumed in late August. The findings and rulings of the Court indicate consideration of the pertinent facts, and familiarity with the authorities of this jurisdiction. Reference was made to *Richards* v. *Forrest*, 278 Mass. 547, as a case "similar in many ways." There particular emphasis was placed upon the very considerations which the defendants assert were overlooked by the Presiding Justice. A ruling that in determining the issue of suitability of the parents, "the welfare of the minor was the most important consideration," was approved. The court stated: "The unfitness of parents . . . must be determined with respect both to their own character, temperament, capacity, and conduct, and to the welfare of the child in connection with its age, environment, and affections." (P. 554). See also, *Hanrahan* v. *Sears*, 72 N. H. 71, 72.

The *prima facie* right of natural parents is not easily controlled by other considerations. *Hanrahan* v. *Sears, supra; Stinson* v. *Meegan*, 318 Mass 459; *Id.*, 319 Mass 682. If the evidence in this case might have supported a different order, we are constrained to the view that it was conscientiously weighed by the court below, and that we may not assert that the conclusions reached were erroneous as a matter of law. Accordingly we hold that no occasion is presented for this court to disturb the solution of "delicate problems . . . concerning domestic relations" (*Richards* v. *Forrest, supra*, 556) reached by the court before which the parties and witnesses personally appeared. The imponderables of human relationships may be better dealt with at first hand than at second. Since upon competent evidence the parents have been found not unsuitable to have the custody of this

child, they are entitled to it by force of the statute. *Sheehy* v. *Sheehy, supra,* 228; *Leclerc* v. *Leclerc,* 85 N. H. 121; *McAlpine* v. *Gilpatrick,* 90 N. H. 57, and cases cited.

We find no clear or definite indication in the record that the Court acted improperly or unintelligently in considering the evidence, or was in any way misled. *Condiles* v. *Waumbec Mills, ante,* 127.

*Exceptions overruled.*

All concurred.