Hillsborough,  } No. 3834.
Oct. 3, 1949. }

PETITION OF JOSEPH E. MORIN & a.

*Nicholas J. Costakis* (by brief and orally), for the plaintiffs.

*William H. Craig,* County Solicitor, *William L. Phinney,* Attorney

General and *Warren E. Waters*, Law Assistant (*Mr. Waters* orally), for the defendant Trustees of the State Industrial School.

DUNCAN, J. The proceedings which culminated in the committal of the plaintiff's minor child were instituted pursuant to the provisions of R. L., c. 132, relating to "Neglected and Delinquent Children." The plaintiffs contend that this act and in particular the provisions of *s.* 2 (II), defining "delinquent child" are unconstitutional. As understood, the argument is directed to the proposition that the statute provides for imprisonment of a minor child without requiring that the child be either charged with or convicted of a crime. By the statutory definition a child "who is wayward, disobedient or uncontrolled by his parent . . . or so deports himself as to injure or endanger the health or morals of himself or others" is a "delinquent child," as is one who "violates any law of this state or any city or town ordinance." *Id.* *s.* 2 (II). Under section 13 of the act a child found to be delinquent may be committed to the industrial school, or made subject to "such orders as to care, custody and probation as justice and the welfare of the child require." The act provides that proceedings taken under it shall "not [be] deemed to be of a criminal nature" (*s.* 17), and that "no child shall be deemed a criminal by reason of an adjudication hereunder and such adjudication shall not be deemed a conviction." (*Id., s.* 23). Under the provisions of R. L., c. 463, *s.* 17, committal of a delinquent child to the industrial school is required to be for the term of his minority. The jurisdiction of the Municipal Court continues until the child reaches twenty-one, unless he is discharged by the court, or jurisdiction is released to the Superior Court. Laws 1945, c. 29.

We think it sufficiently plain that the act in question is designed to permit the exercise of the powers of the state as *"parens patriae"* for the purpose of rehabilitating minor children, and not of punishing them for the commission of a crime. "It is generally held that the purpose of such statutes is not penal, but protective. It is not that the child shall be punished for breach of a law or regulation, but that he shall have a better chance to become a worthy citizen." *State v. Lefebvre,* 91 N. H. 382, 384. See also, *State v. Burt,* 75 N. H. 64, 66. Similar statutes have been universally upheld over objections based upon constitutional grounds. *Cinque v. Boyd,* 99 Conn. 70; *People v. Lewis,* 260 N. Y. 171, *cert. den.* 289 U. S. 709; *Commonwealth v. Fisher,* 213 Pa. 48; *Ex parte Januszewski,* 196 Fed. 123; *Lindsay v. Lindsay,* 257 Ill. 328; *Wissenburg v. Bradley,* 209 Ia. 813; *In re Gomez,* 113 Vt.

224. See also, *Thomas* v. *United States*, 121 Fed. (2d.) 905, 907; annotations, 60 A. L. R. 1342; 67 A. L. R. 1082.

The early decision of *State* v. *Ray*, 63 N. H. 406, held unconstitutional a statute in no way comparable to the act before us. It permitted the court, in lieu of accepting a recognizance on binding over a minor charged with crime, to commit him to reform school without hearing, for the term of his minority. The case is not controlling here. Nor is *People* v. *Turner*, 55 Ill. 280, persuasive. See *In re Ferrier*, 103 Ill. 367; *McLean County* v. *Humphreys*, 104 Ill. 378; *Lindsay* v. *Lindsay*, *supra*. There is no evidence to suggest that the industrial school is other than "a real school, not a prison in disguise" (Mack: The Juvenile Court, 23 Harv. Law Rev. 104, 114), or that committal to it is not a reasonably necessary restraint, rather than imprisonment. We conclude that R. L., *c.* 132 is constitutional.

The plaintiffs make no contention, if the act is constitutional, that the court did not obtain jurisdiction of their child in accordance with its provisions. The proceedings before the municipal court followed the course prescribed by the statute. There was a petition (*s.* 3), notice to the child's parent (*s.* 4), a hearing (*s.* 9), and a finding of delinquency (*s.* 13). It is apparently not questioned that the court, having thus obtained jurisdiction, in its discretion might have entered an order for committal forthwith (*s.* 13). It is claimed however that because the order for committal followed an order for probation and was made without further notice or hearing, it violated constitutional and statutory rights, and therefore was invalid. As the cases previously cited indicate, constitutional guarantees applicable to criminal proceedings are inapplicable to proceedings such as these. Under the court's continuing jurisdiction (*ss.* 1, 13; Laws 1945, *c.* 29) deferred committal was as much within the Court's authority as was immediate committal. The order made was no more violative of constitutional requirements because it was deferred.

The particular statutory provision relied upon by the plaintiffs appears in the act by which the probation department was created. R. L., *c.* 379. It provides: "In case a probationer has violated any of the conditions of his probation any probation officer with or without a warrant, and any other officer with a warrant may arrest him, and the court, after summary hearing, may make such orders as justice requires." *Id.*, *s.* 14. The Trustees assert that this provision is limited in its application to criminal cases, pointing out that the language of "arrest" is not the language applicable to juvenile cases arising under R. L., *c.* 132.

Whatever the intent of the Legislature may have been with respect to the application of the probation act to proceedings authorized by the act relating to neglected and delinquent children, acts enacted within a week of each other (Laws 1937, cc. 143, 152), the application of the quoted provision to the instant case has not been established. The record contains no evidence of violation by the child of any condition of the probation imposed upon her. So far as appears, committal may equally as well have resulted from a purpose to protect her from influences beyond her control as from any voluntary misconduct on her part. The authority of the court to "make such orders as justice required" (R. L., c. 379, s. 14) was not necessarily derived from the probation act requiring proof of violation of probation and a summary hearing. Section 13 of chapter 132 provides that the court may "commit the child to the industrial school, or continue the case with such orders as to care, custody, and probation as justice and the welfare of the child require." The provisions conferring continuing jurisdiction indicate the legislative intent that the alternative dispositions specified shall not be mutually exclusive, but that the requisite orders may be made from time to time during the child's minority. See *In re Gomez, supra.*

Whether the circumstances which prompted the order of committal in this case fairly called for its summary entry without notice or hearing is not disclosed by this record. Failure to provide such notice however, cannot invalidate the order made, which was within the validly acquired, continuing jurisdiction of the tribunal which made it. *Stoker* v. *Gowans*, 45 Utah 556.

Though valid, the procedure followed is not necessarily beyond criticism. Even though the statute requiring summary hearing was not literally applicable, the better practice would have been to afford further notice and opportunity for hearing before committal. By operating to deprive a parent of custody, however restricted, and to take from a child the comparative liberty enjoyed upon probation, committal produces a drastic change in status which should not be imposed without good cause. Whether such cause exists can usually best be determined after hearing rather than before. If the delay incident thereto is thought to endanger the welfare of the child, suitable provision may properly be made for his detention pending hearing. R. L., c. 132, ss. 6, 7.

The refusal of the Superior Court on *habeas corpus* to invalidate the order was not error. Upon such an application, made for the purpose of determining the proper custody of a minor the Court is

concerned not solely with the legality of the custody in which the child is found, but also with the question of what custody is most consistent with the future welfare of the child. *Hanrahan* v. *Sears*, 72 N. H. 71; *Sheehy* v. *Sheehy*, 88 N. H. 223, 226; *Pendergast* v. *Titus*, *ante*, 191. In the finding that the best interests of this child require that she remain in the custody of the defendants there was no abuse of discretion. See *Commonwealth* v. *Ball*, 259 Mass. 148. It follows that the petition was properly denied regardless of the possibility of irregularity in committal not affecting the jurisdiction of the committing court. *State ex rel.* v. *Kilvington*, 100 Tenn. 227; *In re Turner*, 94 Kans. 115; *Stoker* v. *Gowans*, *supra*. See also *Lowery* v. *Fayette County Children's Bureau*, 306 Ky. 817.

So far as the plaintiff's exceptions rest upon a claim of insufficiency of the evidence to warrant the findings made, they are without merit. There was no evidence tending to establish fitness of the parents to resume custody. The fact of the marriage of the delinquent child after committal did not suspend operation of the law by which she was committed, nor did it entitle her to release from the defendants' custody. *Stoker* v. *Gowans*, *supra; In re Hook*, 95 Vt. 497; note, 22 Minn. Law Rev. 285; annotation, 49 A. L. R. 402.

The petition was heard against a background of criminal prosecution of the minor's husband, *State* v. *Lacoshus*, now pending in this court. Both the Presiding Justice and plaintiff's counsel participated in that trial. While little of the evidence there received was introduced at the hearing on this petition, the Trial Court may properly have taken judicial notice of the pendency of the charge, as supporting the findings which were made.

We conclude that committal was by order of a court having jurisdiction to make it, and that there was no error in the finding or ruling that the welfare of the child required that there be no modification of the order.

*Exceptions overruled.*

KENISON, J., was absent; the others concurred.