Plaistow District Court
No. 83-454

*In re* JANE DOE

July 3, 1985

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester, and *Ronald K. Lospennato*, Developmental Disabilities Advocacy Center, Inc., of Concord (*Robert E. Murphy, Jr.*, and *Mr. Lospennato* on the brief and orally), for the father of Jane Doe.

*Engel & Morse P.A.*, of Exeter (*Lynn D. Morse* on the brief and orally), for the Town of Kingston.

*Soule, Leslie, Bronstein & Zelin*, of Salem (*Gerald M. Zelin* on the brief and orally), for the Sanborn Regional School District.

*Gregory H. Smith*, attorney general (*Douglas L. Patch*, assistant attorney general, on the brief and orally), for the State.

SOUTER, J.   The plaintiff has petitioned this court to exercise original jurisdiction by issuing a writ of certiorari or a writ of prohibition directed to the Plaistow District Court. The plaintiff seeks review of orders issued ostensibly under RSA 169-C:27 (Supp. 1983), requiring him to reimburse the Town of Kingston for certain services rendered to his child, known herein as Jane Doe. We grant the petition for writ of certiorari and exercise our jurisdiction thereunder by vacating the district court's orders in question.

An abbreviated statement of facts follows. At all relevant times the plaintiff and his family were residents of the town of Kingston and of the Sanborn Regional School District. On May 7, 1982, the Kingston Police Department filed a complaint in the Plaistow District Court, charging that the plaintiff's daughter Jane Doe was an abused child within the meaning of RSA 169-C:3, II(e) (Supp. 1983) (providing that abuse may consist of non-accidental physical injury). The complaint alleged that the plaintiff had allowed his wife, the child's stepmother, to beat the child with a lawnmower belt.

On May 14, 1982, at a preliminary hearing under RSA 169-C:15 (Supp. 1983), the Court (*Andernacht*, J.), found reasonable cause to believe that Jane was abused, awarded custody to the New Hampshire Division of Welfare, and found the Town of Kingston responsible for expenses in the first instance. *See* RSA 169-C:27 (Supp. 1983). The court held a further hearing on June 11, 1982, at which it made no further findings but continued the custody order and ordered psychological evaluations of the plaintiff and his wife.

At a hearing on October 8, 1982, the court examined reports from a psychologist and a social worker. The psychologist concluded that the plaintiff and his wife were not abusive or neglectful. The social worker concluded that they were not "unfit," "abusive or neglectful," but that Jane was "disturbed." There was no question that the stepmother had struck the child once. The court then made a finding that Jane was "a disturbed child rather than an abused child." It nonetheless continued custody in the division of welfare and ordered that Jane be placed in "an appropriate residential treatment facility." No party objected to or appealed the finding that Jane was not an abused child.

The division of welfare then enrolled Jane in a residential school in Massachusetts. The Town of Kingston thereafter petitioned the court for an order holding the plaintiff liable to reimburse the town for expenses incurred on the child's behalf. *See id.*

In response to the town's petition, on February 1, 1983, the court ordered the plaintiff to pay the town the amount he received each month in certain social security payments for Jane's benefit. The plaintiff responded by motion dated February 28, 1983, seeking reconsideration of the February 1 order. He argued that the order exceeded the authority of the court and claimed that Jane was an emotionally handicapped child within the meaning of RSA 169-C:20 (Supp. 1983), and thus entitled to a "free and appropriate education" under 20 U.S.C.A. 1401–1454 (West 1978 and Supp. 1984) and RSA chapter 186-C (Supp. 1983) at the expense of the school district. On March 25, 1983, a Special Justice (*Hurd*, J.) vacated the February 1 order but instead ordered the plaintiff to pay the town $80.00 a week as reimbursement. The court did not rule on the claim that Jane was educationally handicapped, which was the subject of administrative proceedings.

By motion dated April 7, 1983, the plaintiff moved for reconsideration of the March 25 order, claiming that the October 8, 1982, order "exceeded the authority of this Court" in that it continued the custody of the division of welfare over Jane, even though it found that she was not an abused child. For reasons not relevant here, the court did not act on this motion until October 6, 1983. In the mean-

time the plaintiff engaged unsuccessfully in the administrative proceedings to have Jane declared educationally handicapped and entitled to receive the Massachusetts schooling at public expense.

In September 1983, in anticipation of the hearing on the plaintiff's April 7 motion, the division of welfare filed a motion *in limine*, seeking a ruling that the October 8, 1982, order was a final order within the meaning of RSA 169-C:21 (Supp. 1983). On October 6, 1983, a new Special Justice (*Swasey*, J.) granted the motion *in limine*. He reasoned that the finding that Jane was disturbed but not abused was an attempt to "avoid stigmatizing the parties," which nonetheless functioned implicitly as a "valid and supportable finding" that Jane was an abused child within the meaning of RSA 169-C:3, II(d) (Supp. 1983) (providing that abuse may consist of psychological injury manifested in "symptoms of emotional problems generally recognized to result from consistent mistreatment or neglect").

The special justice concluded that the October 8, 1982, order implying this finding was both a final and a dispositional order, for which the appeal period had expired after 30 days in accordance with the terms of RSA 169-C:28 (Supp. 1983). Having thus concluded that on October 8, 1982, the court had actually found Jane to be an abused child, the special justice rejected the argument that the court lacked jurisdiction to continue custody in the division of welfare at the plaintiff's ultimate expense. Accordingly, the special justice reaffirmed the earlier order of March 25, 1983, requiring the plaintiff to reimburse the town for expenses. On November 4, 1983, the plaintiff filed the present petition.

Although the plaintiff has raised a number of legal and constitutional issues before this court, our affirmative rulings on the following claims are dispositive: it is appropriate for this court to grant a writ of certiorari to determine whether the district court had jurisdiction to issue the order of October 8, 1982, relating to custody and placement, despite the finding that Jane was not abused; the district court lacked jurisdiction to issue the custody and placement provisions of that order; consequently, the court lacked jurisdiction to order the plaintiff to reimburse the town for the expenses incurred on behalf of the child.

██ We take up first the issue of the plaintiff's right to seek review of the jurisdictional question by means of a writ of certiorari issued by this court in the first instance at this time. Review on certiorari is an extraordinary remedy, usually available only in the absence of a right to appeal and only at the discretion of the court, to determine whether another tribunal has acted "illegally in respect

to jurisdiction, authority or observance of the law . . . or has abused its discretion or acted arbitrarily or capriciously." *State v. Brackett*, 122 N.H. 716, 718, 449 A.2d 1210, 1212 (1982). Although petitions for writs of certiorari are not generally subject to a statute of limitations, such a statute may provide a guide for determining the timeliness of a request for certiorari review. *Wilson v. Personnel Comm'n*, 117 N.H. 783, 784, 378 A.2d 1375, 1377 (1977).

Given these standards, we must determine whether the plaintiff could have obtained review of the district court orders in question by means of an appeal or other form of review without invoking the certiorari jurisdiction of this court in the first instance. If any other form of review was possible we must then determine whether the plaintiff was at fault for not availing himself of it. If after these inquiries we conclude that this court's review on certiorari was open to the plaintiff, we must determine whether his petition for review was timely.

We begin by considering the availability of other means of reviewing district court orders in an abuse proceeding under RSA chapter 169-C (Supp. 1983). There are essentially two kinds of orders from which a parent may seek review in such a proceeding, and the means of review will vary according to the type of order in question. The first kind are orders under RSA 169-C:18 (Supp. 1983) finding a child abused, and ensuing dispositional orders under RSA 169-C:19 (Supp. 1983) making provision for custody and placement. RSA 169-C:28 (Supp. 1983) provides for appeal and hearing de novo in the superior court within 30 days from a final dispositional order under RSA 169-C:19 (Supp. 1983). The second kind are orders under RSA 169-C:27 (Supp. 1983) requiring a parent to reimburse a town or other governmental entity for the expenses of dealing with an abused child. The statute provides no appeal from these latter orders, and review is available only by petition for writ of certiorari, normally in the superior court. *In re John M. and David C.*, 122 N.H. 1120, 1130, 454 A.2d 887, 893 (1982). *See Bothwick v. State*, 119 N.H. 583, 590, 406 A.2d 462, 467 (1979) (superior court has concurrent jurisdiction with supreme court to issue writs of certiorari).

It would be unrealistic to consider whether either of these alternative means of review was open to the plaintiff without recognizing that the plaintiff was faced with a highly anomalous situation. The statute contemplates that there will be no order for reimbursement under RSA 169-C:27 (Supp. 1983) without a final dispositional order dealing with custody and placement under RSA 169-C:19 (Supp. 1983). The statute also contemplates that there will be no dispositional order for custody and placement in an abuse case without a

finding of abuse under RSA 169-C:18 (Supp. 1983). Thus, every possibility of an order prejudicial to a parent, and appealable by a parent, is predicated on a finding of abuse.

Yet in this case there was no finding of abuse. There was no such finding in the district court's order of October 8, 1982. And for reasons that we will discuss below, we cannot countenance the attempt of the special justice on October 6, 1983, to read such a finding into the earlier order.

Despite the anomaly of the situation, we believe that the plaintiff could have raised his jurisdictional issue by appeal of the dispositional order. It was, after all, an order depriving him of the custody of his child. But because of the peculiarity of the situation, we do not believe that he should be faulted for failing to take such an appeal. The fact is that the district court placed the plaintiff in a procedural posture that could not have been possible if the court had followed the statute. It would therefore be outrageous for the judicial system now to deny the plaintiff any appellate review simply on the ground that he did not respond with greater sophistication to the incongruity of the October 8, 1982, order. See Wilson v. Personnel Comm'n, 117 N.H. at 785, 378 A.2d at 1377 (where procedural law previously uncertain, petitioner for certiorari should have benefit of the doubt).

When we turn from the availability of appeal to the availability of certiorari in the superior court, the analysis follows a parallel course. In re John M. and David C., 122 N.H. at 1130, 454 A.2d at 893, recognized certiorari as the limited but proper means to review reimbursement orders. For the reasons we have just discussed, an objection to a reimbursement order should not normally raise a jurisdictional issue. Nonetheless, given the peculiarity of this case, the plaintiff could have sought review of the jurisdictional issue by petition for certiorari in the superior court. But because of the peculiarity of the case, we do not fault the plaintiff for seeking review in the first instance by petition to this court.

■■ Hence we conclude that the possibilities of review in the superior court do not stand in the way of certiorari in this court, provided that the present petition was timely. We are satisfied that the plaintiff did make a timely application for review here. The plaintiff made at least a rudimentary attempt to challenge jurisdiction within thirty days of the district court's first reimbursement order. The district court continued to entertain the jurisdictional challenges until it issued the order of October 6, 1983. See Appeal of Golding, 121 N.H. 1055, 438 A.2d 292 (1981). The plaintiff sought review of the district court's final order within 30 days thereafter by

this petition for writ of certiorari. *See Wilson v. Personnel Comm'n supra.* The plaintiff did not rest on his claim. Having so concluded, it is not necessary for us to consider the related questions, whether and to what extent the type of jurisdictional issue involved here is subject to waiver and, hence, to the requirements of timeliness. *See Cooperman v. MacNeil,* 123 N.H. 696, 700, 465 A.2d 879, 881 (1983) (issue of subject matter jurisdiction in strict sense not subject to waiver).

Having found the petition for certiorari in this court both appropriate and timely we turn to the plaintiff's claim that the district court lost subject matter jurisdiction to make custody and placement orders once it had determined that the child was not abused as charged in the complaint. The plaintiff rests his position on the language of RSA 169-C:18, IV (Supp. 1983), that "[i]f the court does not find sufficient evidence of neglect or abuse, it shall dismiss the petition."

■ We agree that the quoted language called for the result that the plaintiff seeks, although we do not accept all of the plaintiff's argument. The plaintiff cites *In re Russell C.,* 120 N.H. 260, 414 A.2d 934 (1980) in support of his argument that the district court lacked subject matter jurisdiction once it had found no abuse. *Russell C.,* however, has no application to a claim challenging subject matter jurisdiction. In that case, we held that the mandates to hold adjudicatory hearings within certain time limits under RSA chapters 169-B and 169-D were jurisdictional, so as to require the court "to forfeit jurisdiction" for non-compliance.·*Id.* at 268, 414 A.2d at 938–39. We were referring there to personal jurisdiction, however, not subject matter jurisdiction, for we grounded our holding on the juvenile's liberty interest, and we indicated that a juvenile could waive the time limits and, therefore, could waive any jurisdictional defect. *Id.* By contrast, lack of subject matter jurisdiction is not subject to waiver. *Cooperman v. MacNeil supra; Klein v. Bronstein,* 91 N.H. 42, 43, 13 A.2d 149, 149 (1940).

Nor do we agree that the language requiring dismissal in the absence of abuse limits subject matter jurisdiction in the strict sense of depriving the court generally of power to act on the subject of custody and placement. *See Jackson v. Company,* 86 N.H. 341, 342, 168 A. 895, 896 (1933).

■ The language is jurisdictional, however, in that it restricts the court's "'jurisdiction' (or power) to act except in a particular manner." *Abelleira v. District Court of Appeal,* 17 Cal. 2d 280, 288, 109 P.2d 942, 947 (1941), *quoted in White v. Renck,* 166 Cal. Rptr. 701, 703 (1980); *Fortenbury v. Superior Court,* 16 Cal. 2d 405, 407–

08, 106 P.2d 411, 412 (1940). *See Jackson v. Company supra.* In this third jurisdictional sense, the statute could not be more plain. If the court finds insufficient evidence of abuse in a case arising under RSA chapter 169-C, the statute provides unconditionally that the court must dismiss the petition. Since the court found affirmatively on October 8, 1982, that the child was not abused, it was obligated to dismiss the petition forthwith. It thus lacked any jurisdiction or power to proceed under RSA 169-C:19 (Supp. 1983) to continue the custody or placement orders then in effect. It therefore follows that the plaintiff may not be held liable for the costs of the court's acts in excess of its powers.

In so concluding, we necessarily reject the interpretation placed on the October 8, 1982, order by the second special justice on October 6, 1983. As we have noted, that justice ruled that the October 8, 1982, order was a final order resting implicitly on a finding that there had been psychological abuse. This position is untenable. It ignores the plain language that the justice of the court used in 1982, when he found the child "disturbed . . . rather than abused."

The special justice sought to turn this finding around on the assumption that the justice in 1982 had ruled on the basis of the reports before him, stating that this language was used to avoid stigmatizing the parties. While the justice in 1982 doubtless did rely on the reports, neither of those reports concluded that the child had been abused, and each report contained an express conclusion that the parents were not abusive to the child. Each report assumed that striking a child once is not necessarily abuse within the meaning of the statute, an assumption which no one in this case has challenged and which is not erroneous on its face. *See* RSA 627:6 (parent may use reasonable force to prevent or punish misconduct). Hence, the reports cannot be sources of any implicit findings of abuse.

■ There is, moreover, further difficulty in the special justice's position that the 1982 order implied a finding of psychological, as distinct from physical, abuse. The "psychological injury" which may qualify as "abuse" under RSA 169-C:3, II(d) (Supp. 1983) requires proof of "symptoms of emotional problems generally recognized to result from consistent mistreatment or neglect." There is simply no evidence in this record that the child's problems were of a sort "generally recognized to result from consistent mistreatment or neglect." Thus, there was no evidentiary basis for the special justice's reading of the 1982 order.

Since we have concluded that the district court exceeded its jurisdiction in entering the orders of custody, placement and reimbursement after a finding of no abuse, those orders must be vacated.

Because we hold that the plaintiff is not liable for reimbursement, there is no occasion to consider his claim that the school district should be liable in his stead under 20 U.S.C.A. 1401–1454 (West 1978 and Supp. 1984) and RSA chapter 186-C (Supp. 1983).

Despite our holding, we nevertheless remand the case for the possible consideration of two issues relating to the plaintiff's liability. First, it is not clear to us whether the town requested reimbursement for expenses incurred prior to the October 8, 1982, finding that there had been no abuse. We express no opinion on the town's right to recover such expenses, for the parties did not brief or argue the question whether a parent can be held liable for the expenses of diagnostic or other services incurred prior to dismissal, in a case in which the court has made a preliminary finding of sufficient facts to sustain the petition. *See* RSA 169-C:16, I (Supp. 1983). Second, the record does not clearly indicate whether any such claim would be barred for failure to give the plaintiff timely notice of his potential liability, as required by our holding in *City of Claremont v. Truell*, 126 N.H. 30, 38, 489 A.2d 581, 587 (1985). We therefore remand for consideration of these issues if appropriate.

> *Orders on custody, placement and reimbursement entered on and after October 8, 1982, vacated; remanded.*

All concurred.