146

Original
No. 97-838

PETITION OF KERRY D.

(New Hampshire Division for Children, Youth and Families)

August 30, 1999

*New Hampshire Legal Assistance*, of Manchester (*Elliott Berry* on the brief and orally), and *Larsen & McNamara*, of Lebanon (*Marilyn Billings McNamara* on the brief), for the petitioner.

*Philip T. McLaughlin*, attorney general (*Ann F. Larney*, assistant attorney general, on the brief and orally), for the State.

*Wayne T. Moynihan*, of Berlin, guardian ad litem, joined in the State's brief.

BRODERICK, J. In this petition for a writ of habeas corpus, the petitioner, Kerry D. (mother), challenges the loss of legal and physical custody of her son as a result of allegations of abuse against the child's father with whom she was not residing. She argues that the Lancaster District Court (*Donovan*, J.) denied her due process by depriving her of legal and physical custody of her child (1) without an allegation or finding that she abused, neglected, or otherwise harmed him, and (2) without complying with statutory and constitutional requirements regarding notice of the nature and consequences of the abuse and neglect proceeding. We vacate and remand.

I

The child was born in August 1995. He moved to Groveton with his natural mother in 1996 and visited with his natural father three times per week. Believing that her son was being abused by his father, the mother called the police who in turn contacted the division of children, youth, and families (DCYF). In late June 1996, DCYF initiated court proceedings pursuant to RSA chapter 169-C (1994 & Supp. 1996) (amended 1997, 1998) alleging that the child's father was abusing him, and obtained an *ex parte* order granting it protective custody and suspending visitation between the child and his father.

In early July, DCYF filed a petition charging the father with physically abusing his son. *See* RSA 169-C:7. At the preliminary hearing, the court found that the allegations against the father were substantiated and transferred legal custody from the mother to DCYF. *See* RSA 169-C:15, :16. The court left physical custody with the mother and required that visits with the father be supervised. The mother, who was indigent, was not represented by counsel.

In August 1996, an adjudicatory hearing was scheduled but did not take place. *See* RSA 169-C:18. Instead, a consent order was issued by agreement of the parties and with the approval of the court. *See* RSA 169-C:17. The order provided that the child was "abused . . . with the perpetrator unknown." It left legal custody with DCYF, physical custody with the mother, and continued the requirement of supervised visitation with the father. The mother was represented by court-appointed counsel when she signed the consent order.

As a result of the consent order provision that the child was abused, the court was authorized to transfer physical custody of the

child or make other decrees based on what it determined to be in the child's best interests. *See* RSA 169-C:19; *see also* RSA 169-C:2, I. At the dispositional hearing in November 1996, the court left legal custody with DCYF, physical custody with the mother, and eliminated the requirement that visitation with the father be supervised. *See* RSA 169-C:19. In June 1997, following a review hearing, the court placed the child in foster care based in part on a report and recommendation by DCYF. *See* RSA 169-C:24. In October 1997, at a further review hearing, the court adopted DCYF's recommendation to transfer placement of the child from foster care to his natural father. The court granted "at least twice monthly" visitation to the mother. The DCYF caseworker did not identify any plan to reunite the child with his mother. This petition for writ of habeas corpus followed.

## II

As a preliminary matter, the State argues that we should dismiss this petition because the mother failed to preserve any issues for appellate review. The mother acknowledges the preservation problem but contends that the circumstances of this case compel consideration of her petition. We agree.

■■ When court action results in the loss of a constitutionally protected liberty interest, it may be collaterally attacked by way of petition for writ of habeas corpus after the time for direct appeal has expired. *Bussiere v. Cunningham, Warden,* 132 N.H. 747, 750, 571 A.2d 908, 910 (1990); *see Martel v. Hancock,* 115 N.H. 237, 237-38, 339 A.2d 9, 10 (1975) (supreme court has original concurrent jurisdiction with superior court over writs of habeas corpus). Contrary to the State's assertion, a writ of habeas corpus may be brought to determine the custody of a minor child. *See, e.g., Sheehy v. Sheehy,* 88 N.H. 223, 226, 186 A. 1, 4 (1936).

This extraordinary remedy is "reserved for those questions which involve fundamental freedoms and occasions of pressing necessity where other remedies are inadequate or ineffective." *Springer v. Hungerford,* 100 N.H. 503, 506, 130 A.2d 538, 540 (1957). The mother argues that she lost legal and physical custody of her child and was granted restrictive visitation rights without due process in violation of Part I, Article 2 of the State Constitution and the Fourteenth Amendment of the Federal Constitution.

We first consider whether the mother alleged the deprivation of a constitutionally protected liberty interest. *See Bussiere,* 132 N.H. at 751, 571 A.2d at 910. We analyze her State claim first. *See State v.*

*Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983). We have long recognized the right to raise and care for one's children as a fundamental liberty interest protected by Part I, Article 2 of the New Hampshire Constitution. *See State v. Robert H.*, 118 N.H. 713, 716, 393 A.2d 1387, 1389 (1978), *disavowed on other grounds by In re Tricia H.*, 126 N.H. 418, 424, 493 A.2d 1146, 1151 (1985). Because the State Constitution is at least as protective of individual liberties as the Federal Constitution, we need not conduct a separate federal inquiry. *Cf. In re Tracy M.*, 137 N.H. 119, 122, 624 A.2d 963, 965 (1993).

We next consider whether an adequate statutory remedy is presently available in this case. *See Springer*, 100 N.H. at 506-07, 130 A.2d at 540. RSA 169-C:4, III provides that a custody "order shall not be modified or changed nor shall another order affecting the status of the child be issued by the superior court except on appeal under RSA 169-C:28." The habeas corpus relief sought by the mother would constitute an order affecting the status of the child within the meaning of RSA 169-C:4, III. The appeal authorized by RSA 169-C:28, however, requires that it be filed in the superior court within thirty days of the order. It is undisputed that the mother did not appeal the consent order within thirty days, and therefore cannot seek relief under RSA 169-C:28.

The mother contends that she did not comply with the statutory appeal requirements because she was not informed of the consequences of agreeing to a finding that her son was abused when she signed the August 1996 consent order. She asserts that she did not become aware of the deprivation of her constitutionally protected interest in raising and caring for her son until several months later when he was removed from her home in June 1997, long after the appeal period provided in RSA 169-C:28 had expired, and the consent order had become final.

█ Although the State argues that the mother could have asked the district court to review the consent order at any time, *see* RSA 169-C:24, the mother would have had to demonstrate that returning custody to her was in the child's best interests, *see* RSA 169-C:23, III; *In re Tammy S.*, 126 N.H. 734, 738, 495 A.2d 1303, 1306 (1985). Moreover, although the State argues that the mother could have asked the district court to review its custody determination, the mother would have been required to allege a sufficient change in circumstances warranting a different disposition. *See* RSA 169-C:22. Thus, under these statutory provisions, the district court would have presumed the consent order was valid and then considered

whether present circumstances merited a different disposition. By. contrast, the superior court would have reviewed the consent order *de novo*. *See* RSA 169-C:28. Finally, although the State contends that this petition should be construed as a petition for a writ of certiorari, such relief is generally available only when there is no statutory right to appeal. *See In re Doe*, 126 N.H. 719, 722, 495 A.2d 1293, 1296 (1985). Because this case involves a constitutionally protected liberty interest and the mother, at present, has no adequate statutory appeal right, we conclude that her petition for writ of habeas corpus is properly before us and proceed to a consideration of its merits.

## III

We need only address the mother's argument that the district court failed to make the determination required by RSA 169-C:17, II that she understood the consequences of the consent order, and that she voluntarily and intelligently consented to the order's terms providing that her son was abused and giving legal custody to DCYF. The State argues that the mother cannot support this allegation because she failed to produce a record that establishes the court's failure to comply with the informed consent requirements of the statute.

RSA 169-C:17, II provides:

> A consent order shall not be approved unless . . . the child and parents, guardian, or custodian are informed of the consequences of the order by the court and the court determines that the child and parents voluntarily and intelligently consent to the terms and conditions of the order.

As a matter of first impression, we must decide whether the parent or the State has the burden to prove compliance with the informed consent requirements of RSA 169-C:17, II, and what proof is necessary. The State urges us to apply the general rule that the moving party, in this case the mother, is responsible for presenting a record sufficient to allow this court to decide an issue presented on appeal. *Rix v. Kinderworks Corp.*, 136 N.H. 548, 553, 618 A.2d 833, 836 (1992). The State argues that, in the absence of a record, we must assume that the trial court acted lawfully. *See id.* The mother argues that the parent in an abuse and neglect proceeding who enters into a consent order is waiving fundamental rights and should be afforded the same protection as a criminal defendant who enters

a guilty plea, and therefore we should require the State to show by clear and convincing evidence that the parent gave informed consent. *See Richard v. MacAskill*, 129 N.H. 405, 408, 529 A.2d 898, 900 (1987). We conclude that, under the facts of this case, the State bears the burden of proving by a preponderance of the evidence that the mother understood the consequences of the consent order and voluntarily and intelligently consented to its terms.

Because parents have a fundamental liberty interest in raising and caring for their children, we have recognized that the loss of care and custody of a child "can be viewed as a sanction more severe than imprisonment." *Robert H.*, 118 N.H. at 716, 393 A.2d at 1389. Although the consent order in this case did not terminate the mother's rights to her son, it constituted a final determination that her son was abused, which allowed the court to take physical custody from her without any finding that she abused, neglected, or otherwise harmed him.

Like the criminal defendant who enters a guilty plea, the parent in an abuse and neglect proceeding who enters into a consent order is waiving critically important constitutional rights. These include the right to a hearing in which the State must prove by a preponderance of the evidence that the child has been abused or neglected, *see* RSA 169-C:13, and the right to cross-examine those who testify against the parent, *see* RSA 169-C:18, III.

RSA 169-C:17, II requires that the court inform the parent of the consequences of signing the consent order. Further, the statute directs the court to make a specific determination that the child and the parents voluntarily and intelligently consent to the terms and conditions of the order. In this case, the statute affords the same level of protection as the State Constitution. *See* RSA 169-C:2, I (one purpose of Child Protection Act is "to establish a judicial framework to protect the rights of all parties involved"); *cf. Tracy M.*, 137 N.H. at 123, 624 A.2d at 965. The statutory obligation imposed on the court is substantively analogous to the constitutionally mandated informed consent requirement for criminal defendants. *See State v. Beaulieu*, 115 N.H. 483, 484-85, 344 A.2d 3, 4 (1975).

We acknowledge that different standards of proof apply in the criminal context. For example, the State must prove a defendant's guilt beyond a reasonable doubt at trial. When a defendant challenges the voluntariness of a plea in a habeas corpus proceeding and the record is inadequate, however, the State is subject to a lesser clear and convincing burden of proof to show that the plea was voluntary or knowing. *See Richard*, 129 N.H. at 408, 529 A.2d at 900.

In the child abuse and neglect context, however, the State is already subject to a diminished burden of proof. If the mother had not signed the consent order, the case would have proceeded to an adjudicatory hearing where the State would have borne the burden of proving by a preponderance of the evidence that the child was abused or neglected. *See* RSA 169-C:13. We have already determined that this statutory standard satisfies constitutional due process requirements. *Tracy M.*, 137 N.H. at 123-24, 624 A.2d at 965-66. A consent order in an abuse and neglect proceeding is, in effect, a substitute for a finding that the child involved has been abused or neglected. Given the nature of a parent's constitutionally protected interest in raising and caring for children, and the consequences of a finding of abuse or neglect, we deem it appropriate to apply the same standard whether that finding is based on a consent order or an adjudicatory hearing. Otherwise, were we to follow the criminal context and apply a lesser burden on the State when dealing with a waiver of parental rights as opposed to an adjudication of those rights, the harm to the parent could be substantial.

Because this proceeding for writ of habeas corpus is a collateral attack on the entry of the consent order, however, the mother's claim that she did not give informed consent is not sufficient, standing alone, to place the burden on the State to show that the consent order was valid. *Cf. Richard*, 129 N.H. at 407, 529 A.2d at 900. Rather, the mother "must describe the specific manner in which the [consent] was in fact involuntary or without understanding, and . . . go forward with evidence sufficient to indicate that [her] specific claim presents a genuine issue for adjudication." *Id.* at 408, 529 A.2d at 900 (quotation and citation omitted).

The mother alleges she did not understand that, by signing the consent order declaring that her son was abused and granting legal custody to DCYF, he could be later removed from her physical custody without any showing that she abused, neglected, or otherwise harmed him. In support of her claim, she offers an affidavit from her court-appointed counsel stating that "[t]o the best of my recollection, the Court, in my presence, did not inquire of [the mother] as to whether she understood the potential consequences of her consenting to legal custody to NH DCYF" and that "neither the Court nor I advised [the mother] that the award of legal custody to DCYF according to the consent order empowered the Court to remove the child from her without a finding that she neglected or abused him."

The State argues that we should not consider her counsel's affidavit as evidence because it was never filed with the trial court and is not part of the record in this case. The State contends that Supreme Court Rule 13(1) limits the record in a case to papers and exhibits filed and considered in the proceedings below and the transcript of those proceedings. Rule 13(1), however, does not apply in a petition for writ of habeas corpus where this court has original jurisdiction. See SUP. CT. R. 13(1).

It is undisputed that there is no record which indicates whether the court inquired into the mother's volition or understanding when she signed the consent order as required by RSA 169-C:17, II. Indeed, the State acknowledges "the informal nature of the proceedings." Moreover, the State conceded during oral argument that it does not know whether the court advised the mother of the consequences of signing the consent order, and that the mother was justified in believing that her physical custody of the child would continue when she signed the order. Based on these circumstances, we consider the attorney's affidavit part of the record and conclude that the mother satisfied her burden of presenting a specific and genuine claim. Cf. Richard, 129 N.H. at 408, 529 A.2d at 900.

We now turn to whether the State met its burden of proving that the court complied with RSA 169-C:17, II. We recognize that we are imposing this burden on the State for the first time and do not fault the district court or the State for not making a record of the entry of the consent order in this case. In light of the standard enunciated here, however, we conclude that the State did not meet its burden of proving that the court complied with the statute.

The State points to the fact that the mother was represented by court-appointed counsel when she signed the consent order, and that she signed a consent order which contained a provision that her child was abused "with the perpetrator unknown." The mere fact that the mother had court-appointed counsel, however, does not raise the inference that she was properly informed. In fact, counsel's affidavit specifically states that she did not inform the mother of the consequences of signing the consent order. Similarly, the fact that the mother signed a consent order that her child was abused with "perpetrator unknown" and which left physical custody with her does not prove that her signing was knowing and voluntary. Indeed, the consent order lacked any language that specifically affirmed that the parties knowingly and voluntarily signed it.

Although the State argues that the transcript of the review hearing in October 1997 contains "no evidence that [the mother] had not understood the consequences of the consent order or that she

did not agree voluntarily to [it]," the State bears the burden to demonstrate that the mother understood the consequences of the consent order and voluntarily and intelligently consented to its terms. This burden could have been met by proving the mother understood that by acknowledging her child was abused by *anyone*, the child could be removed from her custody without any allegation or finding that *she* abused, neglected, or otherwise harmed him. The State, however, failed to do this. Therefore, we need not address its argument further.

■ Because the State failed to prove that the court complied with RSA 169-C:17, II, the entry of the consent order violated the mother's due process rights as protected by Part I, Article 2 of the State Constitution. Accordingly, we vacate the consent order.

We recognize that the passage of time and the lack of a record prevent the district court from conducting an adequate hearing to determine whether the mother understood the consequences of the consent order and voluntarily and intelligently consented to its terms. Therefore, rather than remand this matter to the district court for an evidentiary hearing on the consent order, we remand it for an adjudicatory hearing on the abuse petition. We note that the district court retains its jurisdiction to issue decrees under RSA chapter 169-C unless it concludes, following the adjudicatory hearing, that the child was not abused. *See* RSA 169-C:18, IV; *Doe*, 126 N.H. at 726, 495 A.2d at 1298. In light of this ruling, we need not address the mother's additional arguments.

## IV

■ The only issue now remaining is the appropriate interim remedy. The mother requests that we return the child to her legal and physical custody immediately. We decline to do so under the circumstances of this case. It is well-settled that upon habeas corpus review, the controlling consideration is the present and prospective welfare of the child. *Hanrahan v. Sears*, 72 N.H. 71, 72, 54 A. 702, 703 (1903). Parental rights are not absolute and must yield to what is in the child's best interests. *Tracy M.*, 137 N.H. at 124, 624 A.2d at 966. At the review hearing in October 1997, the district court adopted DCYF's recommendation to place the child in the physical custody of his father with visitation rights in the mother. The court considered the results of an investigation and social study of both parents, as well as the testimony of the DCYF caseworker, in determining that the child's interests would be best served by placing him with his father. The child has remained in DCYF's legal

custody and his father's physical custody since then. Therefore, until further order of the district court, the child shall remain in DCYF's legal custody and the father's physical custody, with existing visitation rights in the mother.

*Vacated and remanded.*

THAYER, J., with whom HORTON, J., joined, dissented; the others concurred.

THAYER, J., dissenting: Because I disagree with the majority's conclusion that the petitioner is entitled to habeas corpus relief to vacate the consent decree awarding legal custody to DCYF, I respectfully dissent.

The petitioner contends that taking the child from her custody violated her right to due process. While alleging a present deprivation of a protected liberty interest is a procedural prerequisite for us to consider a writ of habeas corpus where the consent order vests legal custody in the State, *see Theresa S. v. Sup't of YDC*, 126 N.H. 53, 55, 489 A.2d 592, 594 (1985), the petitioner must also establish that placing the child in her custody is in the child's best interest, *see Petition of Morin*, 95 N.H. 518, 522-23, 68 A.2d 668, 671 (1949) (holding proper analysis in determining if habeas corpus relief is available to juvenile in custody of State is whether custody is legal and in child's best interest).

On appeal, she makes no assertion that placing the child in her custody is in the child's best interest, and the majority errs in not requiring her to do so.

> The writ of *habeas corpus* has two principal functions in the law. It may be used for its original purpose of testing the legality of the restraint imposed upon one who has been deprived of his liberty, or it may be used to determine the question of the right to the custody of a minor.

*Sheehy v. Sheehy*, 88 N.H. 223, 226, 186 A. 1, 4 (1936). Unlike in the deprivation of liberty context, habeas corpus in child custody cases is not used for the purpose of testing the legality of a confinement or restraint. *See Sheehy*, 88 N.H. at 226, 186 A. at 4 (distinguishing habeas corpus proceedings testing legality of one's restraint from those involving custody to minor children).

The primary purpose of habeas corpus in child custody cases is to determine in whose custody the best interest of the child will probably be advanced. *See, e.g., Pendergast v. Titus*, 95 N.H. 191, 192, 60 A.2d 122, 123 (1948); *Petition of Morin*, 95 N.H. at 523, 68

A.2d at 671; 39 AM. JUR. 2D *Habeas Corpus* § 149, at 281 (1968). Here, the petitioner does not argue that it is in the child's best interest that habeas corpus relief be granted. Instead, the petitioner seeks relief to protect her interests, which cannot be considered superior where there has been a finding or stipulation that the child has been abused. The result would be to give the petitioner's interest in raising her child priority over the welfare of the abused child. *Cf. Sylvander v. New England Home for Little Wanderers*, 584 F.2d 1103, 1112 (1st Cir. 1978) (refusing to grant federal habeas corpus relief in case arising from state child custody dispute).

Not only does the petitioner fail to argue that the child's best interest compels our granting of habeas corpus relief, the trial court, after conducting a review hearing in October 1997, found that it was in the child's best interest to live with his father. This conclusion was drawn in part from both the DCYF social worker's and the guardian ad litem's testimony to that effect.

While failure to allege that habeas corpus relief is in the child's best interest is sufficient to defeat habeas corpus relief involving custody of a minor, *see Petition of Morin*, 95 N.H. at 522-23, 68 A.2d at 671, the petitioner has also failed to satisfy the next procedural hurdle for habeas corpus relief, namely that no other adequate remedy exists, *see Springer v. Hungerford*, 100 N.H. 503, 506, 130 A.2d 538, 540 (1957) (holding habeas corpus relief should not be granted where appeal provides for effective remedy). The petitioner acknowledges that she had a right to appeal the consent order within thirty days from its entry. *See* RSA 169-C:28 (1994). She concedes, however, that she failed to avail herself of that right.

Moreover, the petitioner still has avenues available to her. "[W]here the writ of habeas corpus is not the only effective means of preserving petitioner's rights, it should not be used." 39 C.J.S. *Habeas Corpus* § 13, at 487 (1976). RSA 169-C:22 (1994) and RSA 169-C:24 (1994) are two separate means by which the petitioner can currently seek review. The majority contends that these remedies are inferior to her right of direct appeal. The test in granting habeas corpus relief, however, is whether an *adequate* remedy exists; RSA 169-C:22 and RSA 169-C:24 undoubtedly are adequate. On that basis, it would be error to consider her petition and contrary to our case law, which holds that habeas corpus is an extraordinary remedy that should be reserved for situations in which other remedies are inadequate or ineffective. *See Theresa S.*, 126 N.H. at 55, 489 A.2d at 594. To hold otherwise would impermissibly allow writs of habeas corpus to become substitutes for appeal or similar proceedings for

review of claimed error. *See Springer,* 100 N.H. at 505, 130 A.2d at 539. I therefore dissent from the majority's opinion.

HORTON, J., joins in the dissent.